**Lewis R. Landau** (CA Bar No. 143391)
**Attorney at Law**
23564 Calabasas Road, Suite 104
Calabasas, California 91302
Voice and Fax: (888)822-4340
Email: Lew@Landaunet.com

Proposed Counsel to
Debtor in Possession

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

# SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re<br><br>Valley MHP, LLC,<br><br>                Debtor. | Case No.: 1:10-bk-20599-GM<br><br>Chapter 11<br><br>**RESPONSE IN OPPOSITION TO MOTION FOR RELIEF FROM STAY; ALTERNATIVE REQUEST FOR CONTINUANCE; DECLARATION OF MARK MAGNA**<br><br>Date:     October 12, 2010<br>Time:    10:00 a.m.<br>Place:   Courtroom 303; Judge Mund<br>            US Bankruptcy Court<br>            21041 Burbank Blvd., 3rd Floor<br>            Woodland Hills, California 91367 |

   Valley MHP, LLC, a California limited liability company, chapter 11 Debtor in Possession ("Debtor"), herein responds in opposition to the Motion for Relief from the Automatic Stay Under 11 U.S.C. § 362 ("Motion") filed by Remedy Investors, LLC ("Remedy"). In the alternative, the Debtor moves for a continuance of the hearing on the Motion pending completion of Debtor's formal appraisal report.

   The Debtor's response and request for continuance is contained in the following memorandum of points and authorities as supported by the attached declaration of Mark Magna ("Magna Declaration") and the concurrently filed declaration of Robert E. McGraw ("McGraw Declaration") and evidentiary objection.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.**

**INTRODUCTION AND OVERVIEW OF THE CHAPTER 11 CASE**

On August 25, 2010, the Debtor filed its voluntary chapter 11 petition commencing this case. The Debtor continues to manage and operate the estate as a Debtor in Possession pursuant to 11 U.S.C. §§ 1107 and 1108.

The Debtor case is a single asset real estate case in that all of the Debtor's income is generated from the operation of a 27 unit mobile home park located at 7936 Woodley Avenue, Van Nuys, California 91406 ("Property"). The Debtor filed its chapter 11 case due to an imminent foreclosure by Remedy.

The original business plan for the Property involved eliminating the mobile home park and constructing a self-storage facility. At that time, the relocation fee for mobile home residents was $8,000 per unit. After the Debtor's parent company originally acquired the Property, the relocation fees were increased by the City of Los Angeles to approx. $20,000 per unit. This change made the transition to self-storage infeasible. Thus, the Debtor has refocused on stabilizing its mobile home park rents to reorganize its affairs.

The Property was appraised in June, 2006 for $1.7 million and a full narrative description of the Debtor's Property is contained in the authenticated appraisal report attached to the concurrently filed McGraw Declaration as Exhibit 2 thereto. The Property suffers from a deficient electrical distribution system that restricts the Debtor's ability to achieve full occupancy. The Debtor's current income is approximately $5,000 monthly from the rental of eleven (11) mobile home lots which is sufficient to cover operational expenses but not debt service. The Debtor's property manager also occupies one additional duplex unit lot. The Debtor cannot rent more than one (1) additional lot as burdening the electrical system with more than thirteen (13) mobile home units will overload the deficient system. During the heat of the summer months, the Debtor is refraining from renting the additional lot to avoid straining the existing electrical system.

In order to achieve rent stabilization and full occupancy, the Debtor will need to upgrade its electrical distribution system. The estimate attached to the Motion as Exhibit N correctly reflects the approximate $150,000 cost to upgrade the electrical system, although the Debtor believes the project can be completed for $100,000 as the Debtor's manager's representative is a general contractor. Once funding is received, the Debtor can complete the electrical upgrades in approximately two (2) months from permitting. The Debtor believes it can raise the funds necessary to upgrade the electrical system and achieve stabilized occupancy as part of its reorganization.

The appraiser that appraised the Property in June, 2006 has been engaged to complete a current appraisal for the Property. It will take 3 to 4 weeks to complete the narrative report. However, the appraiser has provided an estimate of value based on current market conditions. The McGraw Declaration estimates the current market value for the Property at $1,244,753 to $1,511,486. Based thereon, the Debtor has concurrently amended the valuation in its Schedule A to $1,400,000 to reflect the high end of this valuation estimate less a $100,000 estimate to complete the electrical upgrades required to achieve stabilized occupancy. *See*, Exhibit 1 hereto. Per the Magna Declaration attached hereto, the Debtor does not believe the Property is declining in value. Low income residential property is in high demand in the current economy.

Because the Debtor was unable to afford chapter 11 Debtor in Possession counsel as of the petition date, the Debtor duly filed its petition as represented by counsel with limited chapter 11 experience and whose scope of representation was limited solely to the Debtor. On September 24, 2010, the Debtor retained the undersigned counsel as Debtor in Possession general counsel and any case management deficiencies are being addressed forthwith. Various schedule amendments are required to reflect tenant leases and the claims of the plaintiffs asserted in the Los Angeles Superior Court ("LASC") case number BC420382 action attached to the Motion as Exhibit L.[1] Remedy's recognition of LASC BC420382 inherently contradicts the two party dispute allegation.

---

[1] In regard to LASC case number BC420382, the Court should be aware that the Debtor's insurance carrier has supplied a defense thereto and is defending the action for the Debtor. The Debtor denies the allegations of the complaint and the unverified allegations of the complaint do not constitute evidence of any wrongdoing by the Debtor.

In addition, general counsel will forthwith address cash collateral issues. Upon filing its case, the Debtor failed to immediately close its pre-petition account and approximately $4,000 in checks for pre-petition expenses cleared against September rents. General counsel will investigate this matter, and if necessary, such funds will be replenished into a cash collateral account or a *nunc pro tunc* order authorizing these payments will be sought. October rents have not yet been received, but when received, will be deposited into a cash collateral account and will not be used pending lender consent or an order of the Court. Other than the mistaken clearance of pre-petition checks, no use of cash collateral has occurred post-petition.

The Debtor's non-debt service expenses are relatively minimal and are covered by current rents. The Debtor's expenses consist only of the following:

1. DWP: $2,000;
2. Maintenance and repair: $1,000;
3. Rubbish: $600;
4. Insurance: $450;
5. Gas: $100;
6. Billing service: $65;
7. Eviction services: TBD (generally approximately $750).

Thus, the Debtor can and will meet current expenses and will not accrue a loss during the chapter 11 case.

Turning to the Debtor's prospects for reorganization, the key is to return to stabilized occupancy. At market rents of $600 per month, the Debtor's 27 mobile home lots and duplex will generate $16,200 in gross rents. Although expenses will increase, the new electrical distribution system will allow the Debtor to offset 100% of its electrical charges from tenants as each unit will be individually metered. Even if expenses are as much as 35% of rents, the Debtor anticipates generating more than $10,000 in net operating income before debt service.

$10,000 of net operating income will permit the Debtor to cure and reinstate the Remedy loan. The monthly non-default regular payment is approximately $7,300 (Motion Supplemental

Memorandum 13:8) and the loan matures in 2031. With at least $3,000 in excess income over the base debt service, the Debtor can cure all arrearages in a reasonable time.

Based on all the foregoing, the stay should not be relieved at this time. Remedy has an adequate equity cushion and is, therefore, adequately protected. Furthermore, an effective reorganization is in prospect and the case is only 30 days old. For all these reasons, Remedy's Motion should be *denied*, or in the alternative, continued pending the completion of the McGraw appraisal.

## II.

## RELIEF FROM STAY IN NOT WARRANTED

## UNDER THE FACTS OF THIS CASE

Remedy has moved for relief from stay under 11 U.S.C. § 362(d)(1) and (d)(2). Relief from stay is not warranted under either of these Bankruptcy Code sections. As such, the Motion should be denied. The following subsections track those presented in Remedy's Motion at Supplemental Memorandum pages 7 through 14:

**1. Adequate Protection under 11 U.S.C. § 362(d)(1).**

Remedy contends that relief from stay is warranted under 11 U.S.C. § 362(d)(1) based solely on the $1.1 million value contained in the Debtor's original Schedule A and the allegation that Remedy's accrued claim of $1.063 million yields an equity cushion of only 3.48%. Remedy cites the applicable authorities reflecting that at least a 10% equity cushion can, standing alone, provide adequate protection. *See*, Pacific First Bank v. Boulders on the River, Inc. (In re Boulders on the River, Inc.), 164 B.R. 99, 104 (B.A.P. 9th Cir. 1994) ("Boulders"), *citing*, In re Mellor, 734 F.2d 1396, 1401 (9th Cir. 1984). An equity cushion is calculated by taking the fair market value of the property less the outstanding debt divided by the fair market value. Id., 164 B.R. at 104 fn. 4.

Although the Debtor originally scheduled a $1.1 million valuation for the Property, the Debtor has now amended its Schedule A to reflect a value of $1,400,000. This updated valuation is not arbitrary and is based on the estimate of value provided by McGraw with adjustments by Mr. Magna that are specific to the Property. The Debtor is permitted to amend its schedules to conform to proof and has done so. The Debtor's Schedule A is the ***only*** evidence offered by

Remedy to carry Remedy's burden of proof under 11 U.S.C. § 362(g)(1). At a valuation of $1,400,000, Remedy has a 24% equity cushion in the Property. Under the authorities cited by Remedy, Remedy is adequately protected.

Based on all the foregoing, the stay should not be relieved at this time. Remedy has an adequate equity cushion and is, therefore, adequately protected. For all these reasons, Remedy's Motion should be *denied*, or in the alternative, continued pending the completion of the McGraw appraisal.

### 2. Alleged Bad Faith a Cause Under 11 U.S.C. § 362(d)(1).

Remedy contends that the Debtor's case was filed in bad faith under the allegation that the Debtor has no realistic possibility of reorganization and filed its case solely to frustrate Remedy's efforts to foreclose. This allegation is meritless and the Debtor's single asset real estate case is a *bona fide* effort to reorganize.

Remedy alleges a laundry list of disparate facts which it contends support an allegation of bad faith, none of which meet the standards of the applicable cases. These facts are as follows with responses thereto:

1. *Debtor has one asset*. There is nothing bad faith about a single asset real estate case. In fact, the Code contemplates single asset real estate cases and established a 90 deadline for plan filing.
2. *Remedy's lien encumbers the Property*. Most single asset real estate cases are prompted by a lender's lien that encumbers the property.
3. *No employees*. Most single asset real estate cases have no employees. The lack of employees enhances the Debtor's cash flow.
4. *Tenant property manager for reduced rent*. Debtor believes this is the Debtor's sound business judgment to maintain the property by an on-site manager.
5. *Insufficient cash flow to sustain a plan or make adequate protection payments*. This issue is at the heart of this reorganization. Although there is insufficient ***current*** income, the Debtor's plan is to replace its electrical system and go to full occupancy at

market rents. The Debtor requires funding to do so and is in the process of obtaining such funds.

6. *Only one non-insider unsecured creditor*. This allegation is self defeated by Remedy's attachment of LASC case number BC420382. Although case number BC420382 was disclosed in the Statement of Affairs, the Debtor will amend Schedule F to reflect disputed claims of the plaintiffs in that action. The presence of insider creditors does not defeat good faith. This case is not a two (2) party dispute.

7. *Failure to list Tenant Lawsuit in Schedules*: Case number BC420382 was disclosed in Statement of Affairs item 4. Schedule F requires amendment and will be so amended.

8. *Property is in Foreclosure*: The Court can take judicial notice that imminent foreclosure is a major factor in a majority of bankruptcy filings. This is not evidence of bad faith.

9. *Debtor is a Single Asset Entity and Received Property in 2007:* Apparently this is Remedy's attempt to shoehorn the Debtor's case into the "new debtor syndrome." However, the new debtor syndrome requires a transfer on the eve of bankruptcy. The allegation of a transfer almost three (3) years ago does not evidence the new debtor syndrome.

Based on the foregoing and the Debtor's focused strategy to reorganize the estate, the Debtor's case was not filed in bad faith. For all these reasons, Remedy's Motion should be *denied*.

### 3. Relief from Stay 11 U.S.C. § 362(d)(2).

Finally, Remedy contends that it is entitled to relief under 11 U.S.C. § 362(d)(2) because the Debtor cannot confirm a plan within a reasonable time. As shown above, the Debtor has an effective plan in prospect and relief from stay is not warranted 30 days into this case on these grounds.

Regarding section 362(d)(2) and the ability to confirm a plan, under the Supreme Court's Timbers case, all that is required is that an effective reorganization is "in prospect." United Savings Ass'n of Texas v. Timbers of Inwood Forest Assoc., Ltd., 484 U.S. 365, 108 S. Ct. 626,

98 L.Ed.2d 740 (1988). "In prospect" has been interpreted to mean: (1) that the debtor is proceeding to file a plan; (2) the plan has a realistic chance of being confirmed; and (3) the plan is not patently unconfirmable. In re National/Northway Ltd. P'ship, 279 B.R. 17, 24 (Bankr. D. Mass. 2002). The burden of proof changes on a sliding scale depending on the age of the case. Id. "In order to meet its burden of proving that property is necessary for an effective reorganization under 11 U.S.C. § 362(d)(2), a debtor must prove that the property is important to the reorganization and that the reorganization is feasible." In re Cambridge Woodbridge Apts., LLC, 292 B.R. 832, 840 (Bankr. N.D. Ohio 2003).

Importantly to this issue, the case is only a month old. Thus, the Debtor's burden of proof is not heavy at this stage of the proceedings. The Debtor has a plan in prospect and is proceeding to build the foundation thereof by securing funding to replace its electrical system. Once replaced, the Debtor can go to full occupancy and develop cash flow sufficient to support a plan. Since a plan is "in prospect," Remedy's Motion should be *denied* or continued to determine the Debtor's ability to raise sufficient funding to upgrade its electrical system.

Based on all the foregoing, the stay should not be relieved at this time. An effective reorganization is in prospect and the case is only 30 days old. For all these reasons, Remedy's Motion should be *denied*, or in the alternative, continued pending the completion of the McGraw appraisal and the development of funding for electrical repairs.

### III.
### CONCLUSION

For all the foregoing reasons, Remedy's Motion should be denied. In the alternative, the Motion should be continued for approximately 45 days to allow for the development of this case and completion of the McGraw appraisal. The Debtor requests such other and further relief as the Court deems just and proper under the circumstances.

Dated: September 28, 2010

**Lewis R. Landau**
**Attorney at Law**

By:*/s/ Lewis R. Landau*
Lewis R. Landau
Attorney for Debtor

## DECLARATION OF MARK MAGNA

I, Mark Magna, do hereby declare:

1. I am the president of Markest, Inc. Markest, Inc. is the managing member of Valley MHP, LLC ("Debtor"). I have personal knowledge of the facts contained herein and offer this declaration in response to the motion for relief from stay filed by Remedy Investors, LLC ("Remedy"). On August 25, 2010, the Debtor filed its voluntary chapter 11 petition commencing this case. The Debtor continues to manage and operate the estate as a Debtor in Possession pursuant to 11 U.S.C. §§ 1107 and 1108.

2. The Debtor case is a single asset real estate case in that all of the Debtor's income is generated from the operation of a 27 unit mobile home park and duplex located at 7936 Woodley Avenue, Van Nuys, California 91406 ("Property"). The Debtor filed its chapter 11 case due to an imminent foreclosure by Remedy.

3. The original business plan for the Property involved eliminating the mobile home park and constructing a self-storage facility. At that time, the relocation fee for mobile home residents was $8,000 per unit. After the Debtor's parent company originally acquired the Property, the relocation fees were increased by the City of Los Angeles to approx. $20,000 per unit. This change made the transition to self-storage infeasible. Thus, the Debtor has refocused on stabilizing its mobile home park rents to reorganize its affairs.

4. The Property suffers from a deficient electrical distribution system that restricts the Debtor's ability to achieve full occupancy. The Debtor's current income is approximately $5,000 monthly from the rental of eleven (11) mobile home lots which is sufficient to cover operational expenses but not debt service. The Debtor's property manager also occupies one additional duplex unit. The Debtor cannot rent more than one (1) additional lot as burdening the electrical system with more than thirteen (13) mobile home units will overload the deficient system. During the heat of the summer months, the Debtor is refraining from renting the additional lot to avoid straining the existing electrical system.

5. In order to achieve rent stabilization and full occupancy, the Debtor will need to upgrade its electrical distribution system. The estimate attached to the Motion as Exhibit N

-9-

correctly reflects the approximate $150,000 cost to upgrade the electrical system, although I believe I can manage and complete the project for $100,000 as I am a licensed general contractor. Once funding is received, the Debtor can complete the electrical upgrades in approximately two (2) months from permitting. I believe the Debtor can raise the funds necessary to upgrade the electrical system and achieve stabilized occupancy as part of its reorganization and I am working to obtain a commitment for such funding.

6. The appraiser that appraised the Property in June, 2006 has been engaged to complete a current appraisal for the Property. It will take 3 to 4 weeks to complete the narrative report. However, based on the appraiser's preliminary indication of value based on current capitalization rates and my knowledge of the Debtor's income and expenses and adjusting $100,000 for the cost of the electrical system, I now believe the Debtor's Property is worth $1,400,000 as is. I have taken the high range of McGraw's value estimate (less the electrical upgrade cost) because I believe that McGraw understates gross rents, omits the duplex rental income and omits laundry room income. McGraw also omits taking into account offsets to expenses resulting from tenant electrical reimbursements. I believe that McGraw will take these property specific issues into account in his final appraisal report. I have caused the Debtor's Schedule A to be amended in accordance therewith.

7. On behalf of the Debtor, I do not believe the Property is declining in value. Low income residential property is in high demand in the current economy. Based on my personal knowledge of market rents obtained from operating the Debtor's Property, I believe that market rents are now $600 per mobile home lot and the Debtor could quickly lease all remaining lots if the electrical system were upgraded.

8. Because the Debtor was unable to afford chapter 11 Debtor in Possession counsel as of the petition date, the Debtor duly filed its petition as represented by counsel with limited chapter 11 experience and whose scope of representation was limited solely to the Debtor. On September 24, 2010, the Debtor retained Lewis R. Landau as Debtor in Possession general counsel and any case management deficiencies are being addressed forthwith. Various schedule amendments are required to reflect tenant leases and the claims of the plaintiffs asserted in the Los

Angeles Superior Court ("LASC") case number BC420382 action attached to the Motion as Exhibit L.

9. In addition, general counsel will forthwith address cash collateral issues. Upon filing its case, we failed to immediately close the Debtor's pre-petition bank account and approximately $4,000 in checks for pre-petition expenses cleared against September rents. If necessary, funds will be replenished into a cash collateral account for these disbursements or an order authorizing these payments will be sought. October rents have not yet been received, but when received, will be deposited into a cash collateral account and will not be used pending lender consent or an order of the Court. Other than the mistaken clearance of pre-petition checks, no use of cash collateral has occurred post-petition.

10. The Debtor's non-debt service expenses are relatively minimal and are covered by current rents. The Debtor's expenses consist only of the following:

   a. DWP:                          $2,000;
   b. Maintenance and repair:       $1,000;
   c. Rubbish:                      $600;
   d. Insurance:                    $450;
   e. Gas:                          $100;
   f. Billing service:              $65;
   g. Eviction services:            TBD (generally approximately $750).

Thus, the Debtor can and will meet current expenses and will not accrue a loss during the chapter 11 case.

11. Turning to the Debtor's prospects for reorganization, the key is to return to stabilized occupancy. At market rents of $600 per month, the Debtor's 27 mobile home lots and duplex will generate $16,200 in gross rents. Although expenses will increase, the new electrical distribution system will allow the Debtor to offset 100% of its electrical charges from tenants as each unit will be individually metered. Even if expenses are as much as 35% of rents, I anticipate generating more than $10,000 in net operating income before debt service.

///

12. $10,000 of net operating income will permit the Debtor to cure and reinstate the Remedy loan. Per Remedy's Exhibit M, the monthly non-default regular payment is approximately $7,300 and the loan matures in 2031. With at least $3,000 in excess income over the base debt service, the Debtor can and will cure all arrearages in a reasonable time.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 28th day of September, 2010 at Los Angeles, California.

*[signature]*

Mark Magna

# EXHIBIT 1

# UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA

Filer's Name: **Lewis R. Landau**  Atty Name (if applicable): **Same**

Street Address: **23564 Calabasas Road, Suite 104**  CA Bar No. (if applicable): **143391**

**Calabasas, CA 91302**  Atty Fax No. (if applicable): **888-822-4340**

Filer's Telephone No.: **888-822-4340**

In re:

**Valley MHP, LLC**

Case No.: **1:10-bk-20599 GM**

Chapter  7 _____  11 **X**  13 _____

## AMENDED SCHEDULE(S) AND/OR STATEMENT(S)

A filing fee of $26.00 is required to amend any or all of Schedules "D" through "F." An addendum mailing list is also required as an attachment if creditors are being added to the creditors list. Is/are creditor(s) being added?    Yes _____    No **X**

Indicate below which schedule(s) and/or statement(s) is(are) being amended.

A **X**  B ____  C ____  D ____  E ____  F ____  G ____  H ____  I ____  J ____

Statement of Social Security Number(s) ____    Statement of Financial Affairs ____

Statement of Intention ____    Other ____

**NOTE:** IT IS THE RESPONSIBILITY OF THE DEBTOR TO MAIL COPIES OF ALL AMENDMENTS TO THE TRUSTEE AND TO NOTICE ALL CREDITORS LISTED IN THE AMENDED SCHEDULE(S) AND TO COMPLETE AND FILE WITH THE COURT THE PROOF OF SERVICE ON THE BACK OF THIS PAGE.

I/We, **Mark Magna**, the person(s) who subscribed to the foregoing Amended Schedule(s) and/or Statement(s) do hereby declare under penalty of perjury that the foregoing is true and correct.

DATED: **9/28/10**

*Debtor Signature*

*Co-Debtor Signature*

**FOR COURT USE ONLY**

**SEE REVERSE SIDE**

B-1008 *Revised November 2003*

Form B6A (12/07)

In re  Valley MHP, LLC
                                                                          Debtor.

Case No.: 1:10-bk-20599 GM (If known)

2007 USBC, Central District of California

# SCHEDULE A - REAL PROPERTY

Except as directed below, list all real property in which the debtor has any legal, equitable, or future interest, including all property owned as a co-tenant, community property, or in which the debtor has a life estate. Include any property in which the debtor holds rights and powers exercisable for the debtor's own benefit. If the debtor is married, state whether the husband, wife, both, or the marital community own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor holds no interest in real property, write "None" under "Description and Location of Property."

**Do not include interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.**

If an entity claims to have a lien or hold a secured interest in any property, state the amount of the secured claim. See Schedule D. If no entity claims to hold a secured interest in the property, write "None" in the column labeled "Amount of Secured Claim."

If the debtor is an individual or if a joint petition is filed, state the amount of any exemption claimed in the property only in Schedule C - Property Claimed as Exempt.

| DESCRIPTION AND LOCATION OF PROPERTY | NATURE OF DEBTOR'S INTEREST IN PROPERTY | HUSBAND, WIFE, JOINT, OR COMMUNITY | CURRENT VALUE OF DEBTOR'S INTEREST IN PROPERTY, WITHOUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION | AMOUNT OF SECURED CLAIM |
|---|---|---|---|---|
| 7936 Woodley Avenue<br>Van Nuys, CA 91406 | Fee Simple | | $1,400,000 | $1,802,608 |
| | | Total ➤ | $1,400,000 | |

(Report also on Summary of Schedules.)

| In re: Valley MHP, LLC | CHAPTER: 11 |
|---|---|
| Debtor(s). | CASE NUMBER: 1:10-bk-20599 GM |

**NOTE**: When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on a CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
23564 Calabasas Road, Suite 104
Calabasas, CA 91302

A true and correct copy of the foregoing document described as  RESPONSE IN OPPOSITION TO MOTION FOR RELIEF FROM STAY; ALTERNATIVE REQUEST FOR CONTINUANCE; DECLARATION OF Etc.   will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d), and **(b)** in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** - Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document.  On  9/28/10   I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email addressed indicated below:

☑ Service information continued on attached page

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served):
On  9/28/10   I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follow. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.
 Judge Mund, US Bankruptcy Court, 21041 Burbank Blvd., Suite 342, Woodland Hills, CA 91367

☐ Service information continued on attached page

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____ I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method) by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| 9/28/10 | Lewis R. Landau | /s/ Lewis R. Landau |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009                                                                                                         F 9013-3.1

| | |
|---|---|
| In re: Valley MHP, LLC | CHAPTER: 11 |
| Debtor(s). | CASE NUMBER: 1:10-bk-20599 GM |

**ADDITIONAL SERVICE INFORMATION (if needed):**

NEF Service List (category I):

Scott C Clarkson on behalf of Creditor Remedy Investors, LLC
sclarkson@lawcgm.com

Glen Dresser on behalf of Creditor Community Commerce Bank
gombd@aol.com

Eve A Marsella on behalf of Creditor Remedy Investors, LLC
emarsella@lawcgm.com

Robert Reganyan on behalf of Debtor Valley MHP, LLC.
reganyanlawfirm@gmail.com

S Margaux Ross on behalf of U.S. Trustee United States Trustee (SV)
margaux.ross@usdoj.gov

United States Trustee (SV)
ustpregion16.wh.ecf@usdoj.gov

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                                          **F 9013-3.1**