1  **Lewis R. Landau** (CA Bar No. 143391)
   **Attorney at Law**
2  23564 Calabasas Road, Suite 104
   Calabasas, California 91302
3  Voice and Fax: (888)822-4340
   Email: Lew@Landaunet.com
4
   Attorney for Debtor and
5  Debtor in Possession

6

7              **UNITED STATES BANKRUPTCY COURT**

8              **CENTRAL DISTRICT OF CALIFORNIA**

9              **SAN FERNANDO VALLEY DIVISION**

10

11  In re                              Case No.: 1:10-bk-20599 GM
                                       Chapter 11
12  Valley MHP, LLC,
                                       **EXHIBIT: REDLINED FIRST AMENDED**
13              Debtor                 **DISCLOSURE STATEMENT AND PLAN**

14

15                                     Disclosure Statement Hearing:
                                       Date:   April 12, 2011
16                                     Time:   10:00 a.m.
                                       Place:  Courtroom 303; Judge Mund
17                                             US Bankruptcy Court
                                               21041 Burbank Blvd., 3rd Floor
18                                             Woodland Hills, CA 91367

19

20

21

22

23

24

25

26

27

28

# REDLINE DISCLOSURE STATEMENT

**Lewis R. Landau** (SBN 143391)
**Attorney at Law**
23564 Calabasas Road, Suite 104
Calabasas, CA 91302
Voice and Fax: 888-822-4340
Email: Lew@Landaunet.com

Attorney for Debtor in Possession

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re | Case No.: 1:10-bk-20599 GM |
| Valley MHP, LLC, | In a Case Under Chapter 11 of the Bankruptcy Code (11 U.S.C. § 1101 et seq.) |
| Debtor | **DEBTOR'S** ~~ORIGINAL~~**FIRST AMENDED DISCLOSURE STATEMENT DESCRIBING** ~~ORIGINAL~~**FIRST AMENDED CHAPTER 11 PLAN** |

**Disclosure Statement Hearing**

Date: ~~January 11~~April 12, 2011
Time: 10:00 a.m.
Place: Courtroom 303; Judge Mund
US Bankruptcy Court
21041 Burbank Blvd., 3rd Floor
Woodland Hills, CA 91367

**Plan Confirmation Hearing**

Date: To Be Set
Time: To Be Set
Crtrm.: 303; 3rd Floor
US Bankruptcy Court; Judge Mund
21041 Burbank Blvd., 3rd Floor
Woodland Hills, CA 91367

LEWIS R. LANDAU
ATTORNEY AT LAW

−1−

# I.

## INTRODUCTION

Valley MHP, LLC ("Debtor") is the Debtor in a Chapter 11 bankruptcy case. On August 25, 2010, the Debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code. Chapter 11 allows the Debtor, and under some circumstances, creditors and others parties in interest, to propose a plan of reorganization ("Plan"). The Plan may provide for the Debtor to reorganize by continuing to operate, to liquidate by selling assets of the estate, or a combination of both. The Debtor is the party proposing the Plan sent to you in the same envelope as this document. THE DOCUMENT YOU ARE READING IS THE DISCLOSURE STATEMENT FOR THE ENCLOSED PLAN.

This is a plan of reorganization. In other words, the Proponent seeks to accomplish payments under the Plan by paying creditors from revenues generated by future operations. The Effective Date of the proposed Plan is ~~May~~August 1, 2011.

### A.    Purpose of This Document.

This Disclosure Statement summarizes what is in the Plan, and tells you certain information relating to the Plan and the process the Court follows in determining whether or not to confirm the Plan.

**READ THIS DISCLOSURE STATEMENT CAREFULLY IF YOU WANT TO KNOW ABOUT:**

**(1)    WHO CAN VOTE OR OBJECT,**

**(2)    WHAT THE TREATMENT OF YOUR CLAIM IS (i.e., what your claim will receive if the Plan is confirmed), AND HOW THIS TREATMENT COMPARES TO WHAT YOUR CLAIM WOULD RECEIVE IN LIQUIDATION,**

**(3)    THE HISTORY OF THE DEBTOR AND SIGNIFICANT EVENTS DURING THE BANKRUPTCY,**

**(4)    WHAT THINGS THE COURT WILL LOOK AT TO DECIDE WHETHER OR NOT TO CONFIRM THE PLAN,**

**(5)    WHAT IS THE EFFECT OF CONFIRMATION, AND**

LEWIS R. LANDAU
ATTORNEY AT LAW

**(6)    WHETHER THIS PLAN IS FEASIBLE.**

This Disclosure Statement cannot tell you everything about your rights.  You should consider consulting your own lawyer to obtain more specific advice on how this Plan will affect you and what is the best course of action for you.

Be sure to read the Plan as well as the Disclosure Statement.  If there are any inconsistencies between the Plan and the Disclosure Statement, the Plan provisions will govern.

The Code requires a Disclosure Statement to contain "adequate information" concerning the Plan.  The Bankruptcy Court ("Court") has approved this document as an adequate Disclosure Statement, containing enough information to enable parties affected by the Plan to make an informed judgment about the Plan.  Any party can now solicit votes for or against the Plan.

**B.    Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing.**

THE COURT HAS NOT YET CONFIRMED THE PLAN DESCRIBED IN THIS DISCLOSURE STATEMENT. IN OTHER WORDS, THE TERMS OF THE PLAN ARE NOT YET BINDING ON ANYONE.  HOWEVER, IF THE COURT LATER CONFIRMS THE PLAN, THEN THE PLAN WILL BE BINDING ON THE DEBTOR AND ON ALL CREDITORS AND INTEREST HOLDERS IN THIS CASE.

**1.    Time and Place of the Confirmation Hearing.**

The hearing where the Court will determine whether or not to confirm the Plan will take place on the date set forth in the accompanying notice, once set, in Courtroom 303, 3rd Floor, 21041 Burbank Blvd., Woodland Hills, CA 91367.

**2.    Deadline For Voting For or Against the Plan.**

If you are entitled to vote, it is in your best interest to timely vote on the enclosed ballot and return the ballot in the enclosed envelope to Lewis R. Landau, Attorney at Law, 23564 Calabasas Road, Suite 104, Calabasas, CA 91302.

Your ballot must be received by the date set forth in the accompanying notice or it will not be counted.

**3.**    **Deadline For Objecting to the Confirmation of the Plan.**

Objections to the confirmation of the Plan must be filed with the Court and served upon Lewis R. Landau, Attorney at Law, 23564 Calabasas Road, Suite 104, Calabasas, CA 91302 by the date set forth in the accompanying notice.

**4.**    **Identity of Person to Contact for More Information Regarding the Plan.**

Any interested party desiring further information about the Plan should contact Lewis R. Landau, Attorney at Law, 23564 Calabasas Road, Suite 104, Calabasas, CA 91302, voice and fax: 888-822-4340, email Lew@Landaunet.com.

**C.    Disclaimer.**

The financial data relied upon in formulating the Plan is based on the Debtor's books and records.  The information contained in this Disclosure Statement is provided by the Debtor.  The Plan Proponent represents that everything stated in the Disclosure Statement is true to the Proponent's best knowledge.  The Court has not yet determined whether or not the Plan is confirmable and makes no recommendation as to whether or not you should support or oppose the Plan.

**II.**

**BACKGROUND**

**A.    Description and History of the Debtor's Business.**

Valley MHP, LLC is a Nevada limited liability company, having been formed on December 19, 2007.  The Debtor case is a single asset real estate entity in that all of the Debtor's income is generated from the operation of a 27 unit mobile home park located at 7936 Woodley Avenue, Van Nuys, California 91406 ("Property").  The Debtor filed its chapter 11 case due to an imminent foreclosure by Remedy Investors, LLC ("Remedy").

**B.    Principals/Affiliates of Debtor's Business.**

The Debtor is wholly owned by Hedamar Development, Inc. ("Hedamar").

**C.    Management of the Debtor Before and After the Bankruptcy.**

The Debtor's managing member is Markest, Inc. and its principal Mark Magna.

**D.      Events Leading to Chapter 11 Filing.**

Here is a brief summary of the circumstances that led to the filing of this Chapter 11 case:

The Debtor case is a single asset real estate entity in that all of the Debtor's income is generated from the operation of a 27 unit mobile home park located at 7936 Woodley Avenue, Van Nuys, California 91406 ("Property").

The original business plan for the Property involved eliminating the mobile home park and constructing a self-storage facility. At that time, the relocation fee for mobile home residents was $8,000 per unit. After the Debtor's parent company originally acquired the Property, the relocation fees were increased by the City of Los Angeles to $20,000 per unit. This change made the transition to self-storage infeasible. Thus, the Debtor has refocused on stabilizing its mobile home park rents to reorganize its affairs.

The Property was appraised by a bank in June, 2006 for $1.7 million. The Property suffers from a deficient electrical distribution system that restricts the Debtor's ability to achieve full occupancy. The Debtor's current income is approximately $5,000 monthly from the rental of eleven (11) mobile home lots which is sufficient to cover operational expenses but not debt service. The Debtor's property manager also occupies one additional lot. The Debtor cannot rent more than one (1) additional lot as burdening the electrical system with more than thirteen (13) mobile home units will overload the deficient system.

In order to achieve rent stabilization and full occupancy, the Debtor ~~will need to repair~~is repairing and ~~upgrade~~ upgrading its electrical distribution system. ~~The Debtor is presently upgrading the system and expects to have the repairs completed and occupancy beginning to increase in February, 2011~~.

The Debtor defaulted on its bank loan presently held by Remedy and the chapter 11 case was filed due to Remedy's imminent foreclosure sale. The Debtor has since settled its defaults with Remedy per the ~~Term Sheet~~Stipulation attached hereto as Exhibit 2.

**E.      Significant Events During the Bankruptcy.**

**1.      Bankruptcy Proceedings.**

The following is a chronological list of significant events which have occurred in the case:

LEWIS R. LANDAU
ATTORNEY AT LAW

1.      On August 25, 2010 the Debtor filed its voluntary chapter 11 petition.

2.      On September 28, 2010 the Debtor moved to approve the employment of Lewis R. Landau as general bankruptcy counsel.  On October 20, 2010, the Court entered its order approving the employment of Lewis R. Landau as the Debtor's general bankruptcy counsel.

3.      The Debtor has filed all schedules, statements, lists and initial and monthly operating reports required by the Bankruptcy Code, Federal Rules of Bankruptcy Procedures and United States Trustee guidelines.

4.      The Court Clerk set the Debtor's 341(a) meeting of creditors for September 196, 2010.  The meeting of creditors was conducted and concluded on that date.

5.      On September 15, 2010 the Court entered its order setting a chapter 11 status conference for October 12, 2010.  On October 12, 2010 the Court conducted the initial status conference and the status conference has been continued to the presently scheduled date of December 7, 2010.

6.      Upon filing its case, the Debtor failed to immediately close its pre-petition account and approximately $4,000 in checks for pre-petition expenses cleared against September rents. Other than the foregoing, no cash collateral has been used.  The Debtor is funding operating expenses and the electrical repairs from equity contributions to the Debtor.  Rents are accruing in the Debtor's cash collateral account and will be used to retire the December 10, 2010 real property tax payment.

7.      On September 21, 2010 Remedy moved for relief from stay.  The motion ~~was~~has ~~been~~ continued ~~to December 7, 2010~~several times and is now settled per the Exhibit 2 ~~Term Sheet~~Stipulation attached hereto.

8.      On September 24, 2010, Community Commerce Bank moved for relief from stay in regard to unrelated property that was transferred to the Debtor without the Debtor's knowledge or consent.  Such relief from stay was granted per order entered October 22, 2010.

9.      On November 16, 2010 various tenants moved for relief from stay to continue Superior Court litigation against the Debtor which is addressed through insurance coverage.  See the next section herein regarding adversary proceedings for more detail.

10.     The Court authorized the Debtor to set a November 15, 2010 as a claims bar date. All claims have now been filed and are reflected on the claims register attached as Exhibit 3.

11.     Exhibit 3 reflects 23 claims filed by tenants of the Debtor's trailer park. These are claims numbered 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25 and 26. These claimants previously moved for relief from stay agreeing to solely pursue an insurance recovery and waived their claims against the Debtor. The Debtor therefore objected to all such tenant claims and a hearing thereon is scheduled for April 12, 2010 with no response having been filed by the tenants. It is anticipated that all such tenant claims shall be disallowed by the time of hearing on the Disclosure Statement.

**2.     Other Legal Proceedings.**

The Debtor's only pre-petition legal proceeding was ~~the~~a tenant lawsuit ~~described in one of~~which was incorporated into the ~~sample tenant~~23 proofs of ~~claims attached hereto as Exhibit 4.~~claim described above. The ~~proceeding is presently stayed, but the Debtor anticipates consenting to relief from stay~~stay was relieved to permit the Superior Court action to proceed based on the ~~claimants~~claimants' waiver of claims against the estate and pursuit of insurance recovery only. The matter is in the process of being settled.

The tenants ~~have~~had also filed adversary proceeding number 1:10-ap-01496-GM in this Court for the determination of a non-dischargeable debt under 11 U.S.C. § 523(a)(2). As only individuals receive bankruptcy discharges, the Debtor ~~believes this action will be dismissed in due course in favor of having the tenant disputes resolved in the Los Angeles Superior Court action~~moved to dismiss the action. Prior to the hearing on the Debtor's motion to dismiss, the tenants dismissed the adversary proceeding.

**3.     Actual and Projected Recovery of Preferential or Fraudulent Transfers.**

The Debtor shall not pursue preference or fraudulent transfer recoveries.

**4.     Procedures Implemented to Resolve Financial Problems.**

The Debtor has worked to resolve its disputes with Remedy and repair its electrical system in order to stabilize its rental income and is now in a position to cure Remedy's mortgage defaults and pay other claims over the term of the Plan.

**5.**    **Current and Historical Financial Conditions.**

The Debtor's 2009 financial statements are attached hereto as Exhibit 1.  Exhibit 1 also includes projections for the terms of the Plan.

**III.**

**SUMMARY OF THE PLAN OF REORGANIZATION**

**A.    What Creditors and Interest Holders Will Receive Under The Proposed Plan.**

As required by the Bankruptcy Code, the Plan classifies claims and interests in various classes according to their right to priority.  The Plan states whether each class of claims or interests is impaired or unimpaired.  The Plan provides the treatment each class will receive.

**B.    Unclassified Claims.**

Certain types of claims are not placed into voting classes; instead they are unclassified. They are not considered impaired and they do not vote on the Plan because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code. As such, the Proponent has not placed the following claims in a class.

**1.    Administrative Expenses.**

Administrative expenses are claims for costs or expenses of administering the Debtor's Chapter 11 case which are allowed under Code section 507(a)(2).  The Code requires that all administrative claims be paid on the Effective Date of the Plan, unless a particular claimant agrees to a different treatment.

The following chart lists all of the Debtor's anticipated unpaid 507(a)(2) administrative claims for chapter 11 professionals, the Bankruptcy Court clerk's office and the Office of the United States Trustee and their treatment under the Plan:

| Name | Amount Owed | Treatment |
|---|---|---|
| Lewis R. Landau | $TBD (addressed by retainer) | Paid in Full on Effective Date |

| Clerk's Office Fees | $TBD (de minimis) | Paid in Full on Effective Date |
| Office of the U.S. Trustee Fees | Current | Paid in Full on Effective Date |
| | TOTAL $TBD | |

<u>Court Approval of Fees Required</u>:

The Court must rule on all fees listed in this chart before the fees will be owed. For all fees except Clerk's Office fees and U.S. Trustee's fees, the professional in question must file and serve a properly noticed fee application and the Court must rule on the application. Only the amount of fees allowed by the Court will be owed and required to be paid under this Plan.

As indicated above, the Debtor will need to pay certain administrative claims on the Effective Date of the Plan in amounts to be determined. As indicated elsewhere in this Disclosure Statement, Debtor will have a sufficient amount of cash on hand on the Effective Date of the Plan. The source of this cash will be proceeds in the Debtor's accounts.

**2.    Priority Tax Claims.**

Priority tax claims are certain unsecured income, employment and other taxes described by Code Section 507(a)(8). The Code requires that each holder of such a 507(a)(8) priority tax claim receive the present value of such claim in deferred cash payments, over a period not exceeding five years from the petition date with interest at the most favorable rate offered to other creditors in the Plan.

The following chart lists all of the Debtor's Section 507(a)(8) priority tax claims and their treatment under the Plan:

| Description | Amount Owed | Treatment | |
|---|---|---|---|
| • Name= | | • Pymt interval: | = Monthly |
| • CA FTB per POC 1-1 | $2,108.16 (subject to adjustment) | • Pymt amt/interval: | = $~~45~~49 |
| • Type of tax = Bank and Corporation | | • Begin date: | ~~5~~8/1/11 |
| | | • End date: ~~11~~7/1/1~~4~~15 | |
| • Date tax assessed= | | • Interest Rate % | = 5% |
| • Various | | • Total Payout Amount 100% | = 100% |

**C.    Classified Claims and Interests.**

**1.    Classes of Secured Claims.**

Secured claims are claims secured by liens on property of the estate. The following chart lists all classes containing Debtor's ***non-insider*** secured pre-petition claims and their treatment under this Plan (insider secured claims are included in class 4):

| CLASS# | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 1 | Secured claim of: ~~Remedy Investors, LLC~~Los Angeles County Tax Collector | N | Y | • Pymt interval = ~~See Term Sheet Exhibit 2.~~Monthly. |
|  | • Name= LA County |  |  | • Pymt amt/interval = ~~100%.~~602.68 |
|  | • Collateral description = Real Estate. |  |  | • Balloon pymt = N/A. |
|  | • Collateral value = TBD if necessary. |  |  | • Begin date = ~~Per Term Sheet Exhibit 2.~~8/1/11. |
|  | • Priority of security int. ~~= 1~~= Real Property Tax Lien |  |  | • End date = ~~Per Term Sheet Exhibit 2~~7/1/15. |
|  | • Principal owed = $~~1,043,308.90~~24,687 per POC ~~3~~27-1. |  |  | • Interest rate % = ~~Per Term Sheet Exhibit 2.~~8%. |
|  | • Pre-pet. Arrearage amount = N/A. |  |  | • Total payout = 100%. |
|  | • Post-pet. Arrearage amount = N/A. |  |  | • Treatment of Lien = unaltered. |
|  | • Total claim amount = $~~1,043,308.90~~24,687 per POC ~~3~~27-1. |  |  |  |

| CLASS# | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 2 | Secured claim of:  Remedy Investors, LLC | N | Y | • Pymt interval = Monthly; See amortization schedule attached to Stipulation attached hereto as Exhibit 2 ("Stipulation") at Exhibit C thereto. |
|  | • Name= Remedy |  |  | • Pymt amt/interval = See Stipulation. |
|  | • Collateral description = Real Estate. |  |  | • Balloon pymt = N/A. |
|  | • Collateral value = TBD if necessary. |  |  | • Begin date = July 1, 2011. |

| | | | |
|---|---|---|---|
| | • Priority of security int. = 1 | | • End date = August 1, 2031. |
| | • Principal owed = $1,043,308.90 per POC 3-1. | | • Interest rate % = Per Loan Documents and Stipulation. |
| | • Pre-pet. Arrearage amount = See Stipulation. | | • Total payout = 100%. |
| | • Post-pet. Arrearage amount = See Stipulation. | | • Treatment of Lien = unaltered. |
| | • Total claim amount = $1,043,308.90 per POC 3-1. | | • Other = The Stipulation attached hereto as Exhibit 2 is incorporated into the Plan as containing the terms of Remedy's Plan treatment. |

**2.    Classes of Priority Unsecured Claims.**

Certain priority claims that are referred to in Code Sections 507(a)(3), (4), (5), (6), and (7) are required to be placed in classes. These types of claims are entitled to priority treatment as follows: the Code requires that each holder of such a claim receive cash on the Effective Date equal to the allowed amount of such claim.  However, a class of unsecured priority claim holders may vote to accept deferred cash payments of a value, as of the Effective Date, equal to the allowed amount of such claims.  The Debtor has no priority unsecured claims.

**3.    Classes of General Unsecured Claims.**

General unsecured claims are unsecured claims not entitled to priority under Code Section 507(a).  The following chart identifies this Plan's treatment of the classes containing all of Debtor's general unsecured claims:

| Class | Description | Impaired (Y/N) | Treatment |
|---|---|---|---|
| ~~23~~ | General Unsecured Non-Tenant Non-Insider Claims | Yes | Payment Interval = Monthly. |
| | Total amount of claims = DWP $20,687.87 per POC 2-1. | | Payment amt/interval = $~~345.~~433.20. |
| | | | Begin date = ~~Effective Date.~~August 1, 2011. |
| | | | End date = ~~60 months.~~July 1, 2015. |
| | | | Interest rate: ~~N/A.~~Federal Judgment Rate as of the Confirmation Hearing. |

LEWIS R. LANDAU
ATTORNEY AT LAW

–11–

| | | | Total payout = 100%. |
|---|---|---|---|

| ~~Class~~ | ~~Description~~ | ~~Impaired (Y/N)~~ | ~~Treatment~~ |
|---|---|---|---|
| ~~3~~ | ~~General Unsecured Tenant Claims~~ | ~~No~~ | ~~Payment Interval = None.~~ |
| | ~~Total amount of claims = Per POCs 4-1 to 26-1 (see Exhibit 3 hereto).~~ | | ~~Payment amt/interval = None.~~ |
| | | | ~~Begin date = Not applicable.~~ |
| | | | ~~End date = Not applicable.~~ |
| | | | ~~Interest rate: Not applicable.~~ |
| | | | ~~Total payout = Subject to insurance recovery.~~ |

| Class | Description | Impaired (Y/N) | Treatment |
|---|---|---|---|
| 4 | All insider claims (secured or unsecured) | Yes | Payment Interval = Monthly, if sufficient net operating income is present and subordinated in payment to all priority tax and Class 1, 2 and ~~2~~ 3 claims. |
| | Total amount of claims = <br> JLAB 613 Holdings, Inc.:    $600,000 <br> Joseph A. Magna:             $250,000 <br> Hedamar Development, Inc.: $365,985 <br> Markets, Inc.:                  $125,225 <br> (all per Schedule D and F) | | Payment amt/interval = 75% of net operating income as calculated per Exhibit 1 distributed pro rata to all unsecured claims. |
| | | | Begin date = Effective Date. |
| | | | End date = None. |
| | | | Interest rate:  N/A |
| | | | Total payout = Subject to results of cash flow performance. |

## 4.    Class(es) of Interest Holders.

Interest holders are the parties who hold ownership interest (i.e., equity interest) in the Debtor.  If the Debtor is a corporation, entities holding preferred or common stock in the Debtor are interest holders.  If the Debtor is a partnership, the interest holders include both general and

limited partners.  If the Debtor is an individual, the Debtor is the interest holder.  The following

chart identifies the Plan's treatment of the class of interest holders:

| CLASS # | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|
| 5 | Equity Holders | No | Unimpaired. |

**D.      Means of Effectuating the Plan.**

     **1.      Funding for the Plan.**

The Plan will be funded by the following and will be implemented pursuant to the

following steps:

1.      The Debtor will continue to operate its business and pay unclassified claims and

classes 1, 2, 3 and 4 from future rents.

2.      The Court will retain jurisdiction over the post confirmation estate until such estate

is fully administered and a final decree is entered.

     **2.      Post-confirmation Management.**

The Debtor will be revested with all property of the estate and shall manage all post-

confirmation affairs.  Post-confirmation management will remain unchanged.

     **3.      Disbursing Agent.**

The Debtor shall act as the disbursing agent for the purpose of making all distributions

provided for under the Plan.  The disbursing agent shall serve without bond and shall receive no

additional compensation for distribution services rendered pursuant to the Plan.

**E.      Risk Factors.**

The proposed Plan has the following risks:  The primary Plan risk is that revenues

necessary to fund the plan are not achieved due to general economic conditions and market

factors.  The Debtor does not believe that this risk prevents Plan feasibility.

**F.      Other Provisions of the Plan.**

     **1.      Executory Contracts and Unexpired Leases.**

          **a.      Assumptions.**

LEWIS R. LANDAU
ATTORNEY AT LAW

There are no unexpired leases or executory contracts to be assumed. Any and all executory contracts shall ride through the plan process and remain in effect and unimpaired by the Plan.

**b.    Rejections.**

There are no unexpired leases or executory contracts to be rejected. Any and all executory contracts shall ride through the Plan process and remain in effect and unimpaired by the Plan.

**2.    Changes in Rates Subject to Regulatory Commission Approval.**

This Debtor is not subject to governmental regulatory commission approval of its rates.

**3.    Retention of Jurisdiction.**

The Court will retain jurisdiction to the extent provided by law.

**G.    Tax Consequences of Plan.**

CREDITORS AND INTEREST HOLDERS CONCERNED WITH HOW THE PLAN MAY AFFECT THEIR TAX LIABILITY SHOULD CONSULT WITH THEIR OWN ACCOUNTANTS, ATTORNEYS, AND/OR ADVISORS. The following disclosure of possible tax consequences is intended solely for the purpose of alerting readers about possible tax issues this Plan may present to the Debtor. The Proponent CANNOT and DOES NOT represent that the tax consequences contained below are the only tax consequences of the Plan because the Tax Code embodies many complicated rules which make it difficult to state completely and accurately all the tax implications of any action.

The following are the tax consequences which the Plan will have on the Debtors tax liability: None.

**IV.**

**CONFIRMATION REQUIREMENTS AND PROCEDURES**

PERSONS OR ENTITIES CONCERNED WITH CONFIRMATION OR THIS PLAN SHOULD CONSULT WITH THEIR OWN ATTORNEYS BECAUSE THE LAW ON CONFIRMING A PLAN OF REORGANIZATION IS VERY COMPLEX. The following discussion is intended solely for the purpose of alerting readers about basic confirmation issues,

LEWIS R. LANDAU
ATTORNEY AT LAW

which they may wish to consider, as well as certain deadlines for filing claims. The proponent CANNOT and DOES NOT represent that the discussion contained below is a complete summary of the law on this topic.

Many requirements must be met before the Court can confirm a Plan. Some of the requirements include that the Plan must be proposed in good faith, acceptance of the Plan, whether the Plan pays creditors at least as much as creditors would receive in a Chapter 7 liquidation, and whether the Plan is feasible. These requirements are not the only requirements for confirmation.

**A.      Who May Vote or Object.**

**1.      Who May Object to Confirmation of the Plan.**

Any party in interest may object to the confirmation of the Plan, but as explained below not everyone is entitled to vote to accept or reject the Plan.

**2.      Who May Vote to Accept/Reject the Plan.**

A creditor or interest holder has a right to vote for or against the Plan if that creditor or interest holder has a claim which is both (1) allowed or allowed for voting purposes and (2) classified in an impaired class.

**a.      What Is an Allowed Claim/Interest.**

As noted above, a creditor or interest holder must first have an allowed claim or interest to have the right to vote. Generally, any proof of claim or interest will be allowed, unless a party in interest brings a motion objecting to the claim. When an objection to a claim or interest is filed, the creditor or interest holder holding the claim or interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or interest for voting purposes.

THE BAR DATE FOR FILING A PROOFS OF CLAIMS WAS NOVEMBER 15, 2010. A creditor or interest holder may have an allowed claim or interest even if a proof of claim or interest was not timely filed. A claim is deemed allowed if (1) it is scheduled on the Debtor's schedules and such claim is not scheduled as disputed, contingent, or unliquidated, and (2) no party in interest has objected to the claim. An interest is deemed allowed if it is scheduled and no

LEWIS R. LANDAU
ATTORNEY AT LAW

–15–

party in interest has objected to the interest. All claims are specified in the classification section of this disclosure statement.

### b.    What Is an Impaired Claim/Interest.

As noted above, an allowed claim or interest only has the right to vote if it is in a class that is impaired under the Plan. A class is impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class. For example, a class comprised of general unsecured claims is impaired if the Plan fails to pay the members of that class 100% of what they are owed.

In this case, the Proponent believes that classes 1, 2, 3 and 4 are impaired and that holders of claims in each of these classes are therefore entitled to vote to accept or reject the Plan. Parties who dispute the Proponent's characterization of their claim or interest as being impaired or unimpaired may file an objection to the Plan contending that the Proponent has incorrectly characterized the class.

### 3.    Who is Not Entitled to Vote.

The following four types of claims are not entitled to vote: (1) claims that have been disallowed; (2) claims in unimpaired classes; (3) claims entitled to priority pursuant to Code sections 507(a)(1), (a)(2), and (a)(8); and (4) claims in classes that do not receive or retain any value under the Plan. Claims in unimpaired classes are not entitled to vote because such classes are deemed to have accepted the Plan. Claims entitled to priority pursuant to Code sections 507(a)(1), (a)(2), and (a)(7) are not entitled to vote because such claims are not placed in classes and they are required to receive certain treatment specified by the Code. Claims in classes that do not receive or retain any value under the Plan do not vote because such classes are deemed to have rejected the Plan. EVEN IF YOUR CLAIM IS OF THE TYPE DESCRIBED ABOVE, YOU MAY STILL HAVE A RIGHT TO OBJECT TO THE CONFIRMATION OF THE PLAN.

### 4.    Who Can Vote in More Than One Class.

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim is entitled to accept or reject a Plan in both capacities by casting one ballot for the secured part of the claim and another ballot for the unsecured claim.

### 5.    Votes Necessary to Confirm the Plan.

LEWIS R. LANDAU
ATTORNEY AT LAW

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by a cramdown on non-accepting classes, as discussed later in Section IV(A)(8).

### 6.    Votes Necessary for a Class to Accept the Plan.

A class of claims is considered to have accepted the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the claims which actually voted, voted in favor of the Plan. A class of interests is considered to have accepted the Plan when at least two-thirds (2/3) in amount of the interest-holders of such class which actually voted, voted to accept the Plan.

### 7.    Treatment of Nonaccepting Classes.

As noted above, even if all impaired classes do not accept the proposed Plan, the Court may nonetheless confirm the Plan if the nonaccepting classes are treated in the manner required by the Code. The process by which nonaccepting classes are forced to be bound by the terms of the Plan is commonly referred to as a cramdown. The Code allows the Plan to be crammed down on nonaccepting classes of claims or interests if it meets all consensual requirements except the voting requirements of 1129(a)(8) and if the Plan does not discriminate unfairly and is fair and equitable toward each impaired class that has not voted to accept the Plan as referred to in 11 U.S.C. § 1129(b) and applicable case law.

### 8.    Request for Confirmation Despite Nonacceptance by Impaired Class(es).

The party proposing this Plan will ask the Court to confirm this Plan by cramdown on impaired classes 1, 2, 3 and 4 if these classes do not vote to accept the Plan.

Please note that the proposed Plan treatment described by this Disclosure Statement cannot be crammed down on the following classes: None. AS A RESULT, IF ANY OF THESE CLASSES DOES NOT VOTE TO ACCEPT THE PLAN, THE PLAN WILL NOT BE CONFIRMED.

### B.    Liquidation Analysis.

Lewis R. Landau
Attorney At Law

Another confirmation requirement is the "Best Interest Test", which requires a liquidation analysis.  Under the Best Interest Test, if a claimant or interest holder is in an impaired class and that claimant or interest holder does not vote to accept the Plan, then that claimant or interest holder must receive or retain under the Plan property of a value not less than the amount that such holder would receive or retain if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code.

In a Chapter 7 case, the Debtor's assets are usually sold by a Chapter 7 trustee. Secured creditors are paid first from the sales proceeds of properties on which the secured creditor has a lien.  Administrative claims are paid next.  Next, unsecured creditors are paid from any remaining sales proceeds, according to their rights to priority.  Unsecured creditors with the same priority share in proportion to the amount of their allowed claim in relationship to the amount of total allowed unsecured claims. Finally, interest holders receive the balance that remains after all creditors are paid, if any.

For the Court to be able to confirm this Plan, the Court must find that all creditors and interest holders who do not accept the Plan will receive at least as much under the Plan as such holders would receive under a Chapter 7 liquidation. The Plan Proponent maintains that this requirement is met here for the following reasons:  The plan pays allowed creditors either in full or the liquidation value of all assets of the chapter 11 estate, unless they consent otherwise.

Below is a demonstration, in balance sheet format, that all creditors and interest holders will receive at least as much under the Plan as such creditor or interest holder would receive under a Chapter 7 liquidation.  This information is provided by the Debtor.

**ASSETS VALUED AT LIQUIDATION VALUES (per schedules unless otherwise indicated):**

CURRENT ASSETS
| a. | Cash on hand | $0 |
| b. | Accounts receivable | $0 |
| c. | Inventories | $0 |

| | TOTAL CURRENT ASSETS | $48,813 |

LEWIS R. LANDAU
ATTORNEY AT LAW

FIXED ASSETS
a.      Office furniture & equipment                    $0
b.      Machinery & equipment                           $0
c.      Automobiles                                     $0
d.      Building & Land                                 $1,400,000
                                                        _____
        TOTAL FIXED ASSETS                              $1,400,000

OTHER ASSETS
a.      Customer list                                   $0
b.      Other intangibles                               $0
        TOTAL OTHER ASSETS
                                                        _____
                                                        $0
**TOTAL ASSETS AT LIQUIDATION VALUE**                   **$1,400,000**
                                                        ===========
**Less:**
Secured creditor recovery                               $1,043,309
**Less:**
Chapter 7 trustee fees and expenses (Based on 100% distribution to all
allowed claimants 5% Trustee fee; 6% broker; legal $30,000)      $200,000
**Less:**
Chapter 11 administrative expenses ($50 plus 1 quarter of UST fees)   $375
**Less:**
Priority claims (tax and other),                        $1,720
excluding administrative expense claims
**Less:**
Debtor's claimed exemptions                             $N/A
                                                        ===========
    (1)     Balance for unsecured claims                $154,596
    (2)     Total amt of unsecured claims (class 23 and 4 claims)   $1,391,867

**% OF THEIR CLAIMS WHICH UNSECURED CREDITORS WOULD RECEIVE OR
    RETAIN IN A CH. 7 LIQUIDATION: = 8%**
**% OF THEIR CLAIMS WHICH UNSECURED CREDITORS WOULD RECEIVE OR
    RETAIN UNDER THIS PLAN: = 100%**

---

[1] Note:    The deficiency portion of a secured recourse claim must be added to the total amount of unsecured claims.
[2] Note:    If this percentage is greater than the amount to be paid to the unsecured creditors on a "present value basis" under the Plan,
             the Plan is not confirmable unless Proponent obtains acceptance by every creditor in the general unsecured class.

        Below is a demonstration, in tabular format, that all creditors and interest holders will

receive at least as much under the Plan as such creditor or holder would receive under a Chapter 7

liquidation.

| **CLAIMS & CLASSES** | **PAYOUT PERCENTAGE UNDER THE PLAN** | **PAYOUT PERCENTAGE IN CHAPTER 7 LIQUIDATION** |
|---|---|---|
| Administrative Claims | 100% | 100% |
| Priority Tax Claims | 100% | 100% |

| Class 1 – ~~Remedy~~LA County | 100% | 100% |
|---|---|---|
| Class 2 – ~~General Unsecured~~ Remedy | 100% | ~~8%~~100% |
| Class 3 – ~~Tenants~~ General Unsecured | ~~Per Insurance Recovery~~100% | ~~Per Insurance Recovery~~8% |
| Class 4 – Insiders | 100% | 8% |
| Class 5 – Interests | Unimpaired. | Unimpaired. |

## C.    Feasibility.

Another requirement for confirmation involves the feasibility of the Plan, which means that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor under the Plan, unless such liquidation or reorganization is proposed in the Plan.

There are at least two important aspects of a feasibility analysis. The first aspect considers whether the Debtor will have enough cash on hand on the Effective Date of the Plan to pay all the claims and expenses which are entitled to be paid on such date. The Plan Proponent maintains that this aspect of feasibility is satisfied as illustrated here:

Cash Debtor will have on hand by Effective Date (projected to ~~5~~8/1/11):    $~~30,000~~10,766

**To Pay:**        Administrative claims (TBD)                                      -$0

**To Pay:**        Statutory costs & charges (1 quarter of UST fees)        -$325

**To Pay:**        Other Plan Payments due                                          -$~~3,390~~10,441
                   on Effective Date (Remedy, FTB, LA County, DWP)

Balance (due) after paying these amounts ...................................    $~~26,61~~00

The sources of the cash Debtor will have on hand by the Effective Date, as shown above are:

$~~0~~8,275            Cash in DIP Account (~~after payment~~as of ~~12/10/10 RE taxes~~January 31, 2011 per MOR #6 less $4,700 capital improvement reserve)

$~~30,000~~ $8,275    Additional net cash DIP will accumulate from net earnings between now and Effective Date (for purposes of calculating cash available for effective Date payments, Debtor assumes all cash on hand, plus accruing tenant rents shall be fully consumed by operating expenses and the Remedy July, 2011 Stipulation payment).

$10,766            Mark Magna has committed to fund the amounts necessary for

Effective Date payments and Plan payments until the Debtor re-establishes stabilized occupancy per the Plan projections attached hereto as Exhibit 1.

~~N/A~~                          ~~Capital Contributions~~

$~~0~~TBD                         ~~Other~~
                                 Other: Tenant security deposits from new tenancies as the Debtor achieves stabilized occupancy.
$~~30,000~~10,766

The second aspect considers whether the Proponent will have enough cash over the life of the Plan to make the required Plan payments. Attached to the Disclosure Statement as Exhibit 1 are cash flow projections for the term of the Plan showing the Plan is feasible.

YOU ARE ADVISED TO CONSULT WITH YOUR ACCOUNTANT OR FINANCIAL ADVISOR IF YOU HAVE ANY QUESTIONS PERTAINING TO THESE FINANCIAL STATEMENTS.

## V.

## EFFECT OF CONFIRMATION OF PLAN

**A.    Discharge.**

This Plan provides that the Debtor shall be discharged of liability for payment of debts incurred before confirmation of the Plan, as specified in 11 U.S.C. § 1141. The terms of the Plan will bind all creditors and parties in interest to the provisions thereof.

**B.    Revesting of Property in the Debtor.**

Except as provided in Section V(E) and except as provided elsewhere in the Plan, the confirmation of the Plan revests all of the property of the estate in the Debtor.

**C.    Modification of Plan.**

The Proponent of the Plan may modify the Plan at any time before confirmation. However, the Court may require a new disclosure statement and/or revoting on the Plan.

LEWIS R. LANDAU
ATTORNEY AT LAW

The Proponent of the Plan may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated <u>and</u> (2) the Court authorizes the proposed modifications after notice and a hearing.

**D.      Post-Confirmation Status Report.**

Within 120 days of the entry of the order confirming the Plan, Plan Proponent shall file a status report with the Court explaining what progress has been made toward consummation of the confirmed Plan.  The status report shall be served on the United States Trustee, the twenty largest unsecured creditors, and those parties who have requested special notice. Further status reports shall be filed every 120 days and served on the same entities.

The reorganized debtor's post-confirmation status reports shall reflect all income and disbursements for each quarter or portion thereof while the case remains open, and the reorganized debtor shall timely pay U.S. Trustee Quarterly Fees pursuant to 28 U.S.C. § 1930(a)(6).

**E.      Post-Confirmation Conversion/Dismissal.**

A creditor or party in interest may bring a motion to convert or dismiss the case under § 1112(b), after the Plan is confirmed, if there is a default in performing the Plan.  If the Court orders, the case converted to Chapter 7 after the Plan is confirmed, then all property that had been property of the Chapter 11 estate, and that has not been disbursed pursuant to the Plan, will revest in the Chapter 7 estate.  The automatic stay will be reimposed upon the revested property, but only to the extent that relief from stay was not previously authorized by the Court during this case.

The order confirming the Plan may also be revoked under very limited circumstances. The Court may revoke the order if the order of confirmation was procured by fraud and if the party in interest brings an adversary proceeding to revoke confirmation within 180 days after the entry of the order of confirmation.

**F.      Final Decree.**

Once the estate has been fully administered as referred to in Bankruptcy Rule 3022, the Plan Proponent, or other party as the Court shall designate in the Plan Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case.

Dated:  ~~November 23, 2010~~March 5, 2011                    **Lewis R. Landau**
                                                             **Attorney at Law**


                                              By:_/s/ Lewis R. Landau_
                                              Lewis R. Landau
                                              Attorney for Debtor

# REDLINE PLAN

1  | **Lewis R. Landau** (SBN 143391)
   | **Attorney at Law**
2  | 23564 Calabasas Road, Suite 104
   | Calabasas, CA  91302
3  | Voice and Fax:  888-822-4340
   | Email: Lew@Landaunet.com
4  |
   | Attorneys for Debtor
5  | and Debtor in Possession

6

7

8                    **UNITED STATES BANKRUPTCY COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10                   **SAN FERNANDO VALLEY DIVISION**

11

| In re | Case No.:  1:10-bk-20599 GM |
| --- | --- |
| Valley MHP, LLC, | In a Case Under Chapter 11 of the Bankruptcy Code (11 U.S.C. § 1101 et seq.) |
| Debtor | **DEBTOR'S ~~ORIGINAL~~FIRST AMENDED CHAPTER 11 PLAN** |
| | **Disclosure Statement Hearing** |
| | Date:  ~~January 11~~April 12, 2011 |
| | Time:  10:00 a.m. |
| | Place:  Courtroom 303; Judge Mund |
| |         US Bankruptcy Court |
| |         21041 Burbank Blvd., 3rd Floor |
| |         Woodland Hills, CA 91367 |
| | **Plan Confirmation Hearing** |
| | Date:     To be set |
| | Time:     To be set |
| | Place:    Courtroom 303; Judge Mund |
| |           US Bankruptcy Court |
| |           21041 Burbank Blvd., 3rd Floor |
| |           Woodland Hills, CA 91367 |

1

# I.

## INTRODUCTION

Valley MHP, LLC ("Debtor") is the Debtor in a Chapter 11 bankruptcy case.  On August 25, 2010, the Debtor filed a voluntary Chapter 11 petition under the United States Bankruptcy Code ("Code"), 11 U.S.C. § 101 et seq.  Sent to you in the same envelope as this document is the Disclosure Statement which has been approved by the Court, and which is provided to help you understand the Plan.

This is a plan of reorganization.  In other words, the Proponent seeks to accomplish payments under the Plan by paying creditors from revenues generated by future operations.  The Effective Date of the proposed Plan is ~~May~~August 1, 2011.

# II.

## SUMMARY OF THE PLAN OF REORGANIZATION

**A.      What Creditors and Interest Holders Will Receive Under The Proposed Plan.**

As required by the Bankruptcy Code, the Plan classifies claims and interests in various classes according to their right to priority.  The Plan states whether each class of claims or interests is impaired or unimpaired.  The Plan provides the treatment each class will receive.

**B.      Unclassified Claims.**

Certain types of claims are not placed into voting classes; instead they are unclassified. They are not considered impaired and they do not vote on the Plan because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code. As such, the Proponent has not placed the following claims in a class.

**1.      Administrative Expenses.**

Administrative expenses are claims for costs or expenses of administering the Debtor's Chapter 11 case which are allowed under Code section 507(a)(2).  The Code requires that all administrative claims be paid on the Effective Date of the Plan, unless a particular claimant agrees to a different treatment.

The following chart lists all of the Debtor's anticipated unpaid 507(a)(2) administrative claims for chapter 11 professionals, the Bankruptcy Court clerk's office and the Office of the United States Trustee and their treatment under the Plan:

| Name | Amount Owed | Treatment |
|---|---|---|
| Lewis R. Landau | $TBD (addressed by retainer) | Paid in Full on Effective Date |
| Clerk's Office Fees | $TBD (de minimis) | Paid in Full on Effective Date |
| Office of the U.S. Trustee Fees | Current | Paid in Full on Effective Date |
|  | TOTAL $TBD |  |

**Court Approval of Fees Required:**

The Court must rule on all fees listed in this chart before the fees will be owed. For all fees except Clerk's Office fees and U.S. Trustee's fees, the professional in question must file and serve a properly noticed fee application and the Court must rule on the application. Only the amount of fees allowed by the Court will be owed and required to be paid under this Plan.

**2.    Priority Tax Claims.**

Priority tax claims are certain unsecured income, employment and other taxes described by Code Section 507(a)(8). The Code requires that each holder of such a 507(a)(8) priority tax claim receive the present value of such claim in deferred cash payments, over a period not exceeding five years from the petition date with interest at the most favorable rate offered to other creditors in the Plan.

The following chart lists all of the Debtor's Section 507(a)(8) priority tax claims and their treatment under the Plan:

| Description | Amount Owed | Treatment | |
|---|---|---|---|
| • Name= | | • Pymt interval: | = Monthly |
| • CA FTB per POC 1-1 | $2,108.16 (subject to adjustment) | • Pymt amt/interval: | = $~~45~~49 |
| • Type of tax = Bank and Corporation | | • Begin date: | ~~5~~8/1/11 |
| | | • End date: ~~11~~7/1/~~14~~15 | |
| • Date tax assessed= | | • Interest Rate % | = 5% |
| • Various | | • Total Payout Amount 100% | = 100% |

**C.    Classified Claims and Interests.**

**1.    Classes of Secured Claims.**

Secured claims are claims secured by liens on property of the estate. The following chart lists all classes containing Debtor's ***non-insider*** secured pre-petition claims and their treatment under this Plan (insider secured claims are included in class 4):

| CLASS# | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 1 | Secured claim of: ~~Remedy Investors, LLC~~Los Angeles County Tax Collector | N | Y | • Pymt interval = ~~See Term Sheet Exhibit 1 hereto.~~Monthly. |
| | • Name= LA County | | | • Pymt amt/interval = ~~100%.~~602.68 |
| | • Collateral description = Real Estate. | | | • Balloon pymt = N/A. |
| | • Collateral value = TBD if necessary. | | | • Begin date = ~~Per Term Sheet Exhibit~~ 8/1/11. |
| | • Priority of security int. =~~1~~= Real Property Tax Lien | | | • End date = ~~Per Term Sheet Exhibit~~ 7/1/15. |
| | • Principal owed = $~~1,043,308.90~~24,687 per POC ~~3~~27-1. | | | • Interest rate % = ~~Per Term Sheet Exhibit 1.~~8%. |
| | • Pre-pet. Arrearage amount = N/A. | | | • Total payout = 100%. |
| | • Post-pet. Arrearage amount = N/A. | | | • Treatment of Lien = unaltered. |
| | • Total claim amount = $~~1,043,308.90~~24,687 per POC ~~3~~27-1. | | | |

| CLASS# | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 2 | Secured claim of: Remedy Investors, LLC | N | Y | • Pymt interval = Monthly; See amortization schedule attached to Stipulation attached to Disclosure Statement as Exhibit 2 ("Stipulation") at Exhibit C thereto. |
| | • Name= Remedy | | | • Pymt amt/interval = See Stipulation. |
| | • Collateral description = Real Estate. | | | • Balloon pymt = N/A. |
| | • Collateral value = TBD if necessary. | | | • Begin date = July 1, 2011. |

4

| | | | | |
|---|---|---|---|---|
| | • Priority of security int. = 1 | | | • End date = August 1, 2031. |
| | • Principal owed = $1,043,308.90 per POC 3-1. | | | • Interest rate % = Per Loan Documents and Stipulation. |
| | • Pre-pet. Arrearage amount = See Stipulation. | | | • Total payout = 100%. |
| | • Post-pet. Arrearage amount = See Stipulation. | | | • Treatment of Lien = unaltered. |
| | • Total claim amount = $1,043,308.90 per POC 3-1. | | | • Other = The Stipulation attached to the Disclosure Statement as Exhibit 2 is incorporated into the Plan as containing the terms of Remedy's Plan treatment. |

**2.    Classes of Priority Unsecured Claims.**

Certain priority claims that are referred to in Code Sections 507(a)(3), (4), (5), (6), and (7) are required to be placed in classes. These types of claims are entitled to priority treatment as follows: the Code requires that each holder of such a claim receive cash on the Effective Date equal to the allowed amount of such claim.  However, a class of unsecured priority claim holders may vote to accept deferred cash payments of a value, as of the Effective Date, equal to the allowed amount of such claims.  The Debtor has no priority unsecured claims.

**3.    Classes of General Unsecured Claims.**

General unsecured claims are unsecured claims not entitled to priority under Code Section 507(a).  The following chart identifies this Plan's treatment of the classes containing all of Debtor's general unsecured claims:

| Class | Description | Impaired (Y/N) | Treatment |
|---|---|---|---|
| 23 | General Unsecured Non-Tenant Non-Insider Claims | Yes | Payment Interval = Monthly. |
| | Total amount of claims = DWP $20,687.87 per POC 2-1. | | Payment amt/interval = $~~345.~~433.20. |
| | | | Begin date = ~~Effective Date.~~August 1, 2011. |
| | | | End date = ~~60 months.~~July 1, 2015. |
| | | | Interest rate: ~~N/A.~~Federal Judgment Rate as of the Confirmation Hearing. |

| | | | Total payout = 100%. |
|---|---|---|---|

| Class | Description | Impaired (Y/N) | Treatment |
|---|---|---|---|
| ~~3~~4 | ~~General Unsecured Tenant Claims~~All insider claims (secured or unsecured) | ~~No~~Yes | ~~Payment Interval = None.~~ Payment Interval = Monthly, if sufficient net operating income is present and subordinated in payment to all priority tax and Class 1, 2 and 3 claims. |
| | Total amount of claims = ~~Per POCs 4-1 to 26-1 (see Disclosure Statement Exhibit 3).~~JLAB 613 Holdings, Inc.:    $600,000 Joseph A. Magna: $250,000 Hedamar Development, Inc.: $365,985 Markets, Inc.: $125,225 (all per Schedule D and F) | | Payment amt/interval = ~~None.~~ 75% of net operating income as calculated per Exhibit 1 to the Disclosure Statement distributed pro rata to all unsecured claims. |
| | | | ~~Begin date = Not applicable.~~ |
| | | | ~~End date =   Not applicable.~~ |
| | | | ~~Interest rate: Not applicable.~~ |
| | | | ~~Total payout =  Subject to insurance recovery.~~ |

| ~~Class~~ | ~~Description~~ | ~~Impaired (Y/N)~~ | ~~Treatment~~ |
|---|---|---|---|
| ~~4~~ | ~~All insider claims (secured or unsecured)~~ | ~~Yes~~ | ~~Payment Interval = Monthly, if sufficient net operating income is present and subordinated in payment to all priority tax and Class 1 and 2 claims.~~ |
| | ~~Total amount of claims = JLAB 613 Holdings, Inc.:    $600,000 Joseph A. Magna:    $250,000 Hedamar Development, Inc.: $365,985 Markets, Inc.:    $125,225~~ | | ~~Payment amt/interval = 75% of net operating income as calculated per Exhibit 1 to the Disclosure Statement distributed pro rata to all unsecured claims.~~ |
| | | | Begin date = Effective Date. |
| | | | End date =  None. |
| | | | Interest rate:  N/A |
| | | | Total payout = Subject to results of cash flow performance. |

## 4.    Class(es) of Interest Holders.

Interest holders are the parties who hold ownership interest (i.e., equity interest) in the

Debtor.  If the Debtor is a corporation, entities holding preferred or common stock in the Debtor

are interest holders.  If the Debtor is a partnership, the interest holders include both general and limited partners.  If the Debtor is an individual, the Debtor is the interest holder.  The following chart identifies the Plan's treatment of the class of interest holders:

| CLASS # | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---------|-------------|----------------|-----------|
| 5 | Equity Holders | No | Unimpaired. |

**D.      Means of Effectuating the Plan.**

       **1.      Funding for the Plan.**

The Plan will be funded by the following and will be implemented pursuant to the following steps:

    1.      The Debtor will continue to operate its business and pay unclassified claims and classes 1, 2, 3 and 4 from future rents.

    2.      The Court will retain jurisdiction over the post confirmation estate until such estate is fully administered and a final decree is entered.

       **2.      Post-confirmation Management.**

The Debtor will be revested with all property of the estate and shall manage all post-confirmation affairs.  Post-confirmation management will remain unchanged.

       **3.      Disbursing Agent.**

The Debtor shall act as the disbursing agent for the purpose of making all distributions provided for under the Plan.  The disbursing agent shall serve without bond and shall receive no additional compensation for distribution services rendered pursuant to the Plan.

**E.      Other Provisions of the Plan.**

       **1.      Executory Contracts and Unexpired Leases.**

          **a.      Assumptions.**

There are no unexpired leases or executory contracts to be assumed.  Any and all executory contracts shall ride through the plan process and remain in effect and unimpaired by the Plan.

**b.        Rejections.**

There are no unexpired leases or executory contracts to be rejected.  Any and all executory contracts shall ride through the Plan process and remain in effect and unimpaired by the Plan.

**2.        Changes in Rates Subject to Regulatory Commission Approval.**

This Debtor is not subject to governmental regulatory commission approval of its rates.

**3.        Retention of Jurisdiction.**

The Court will retain jurisdiction to the extent provided by law.

**III.**

**EFFECT OF CONFIRMATION OF PLAN**

**A.    Discharge.**

This Plan provides that the Debtor shall be discharged of liability for payment of debts incurred before confirmation of the Plan, as specified in 11 U.S.C. § 1141.  The terms of the Plan will bind all creditors and parties in interest to the provisions thereof.  The Debtor's confirmation discharge shall be entered contemporaneously with the Plan Effective Date.

**B.    Revesting of Property in the Debtor.**

Except as provided in Section III(E), and except as provided elsewhere in the Plan, the confirmation of the Plan revests all of the property of the estate in the Debtor.

**C.    Modification of Plan.**

The Proponent of the Plan may modify the Plan at any time before confirmation.  However, the Court may require a new disclosure statement and/or revoting on the Plan.

The Proponent of the Plan may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated and (2) the Court authorizes the proposed modifications after notice and a hearing.

**D.    Post-Confirmation Status Report.**

Within 120 days of the entry of the order confirming the Plan, Plan Proponent shall file a status report with the Court explaining what progress has been made toward consummation of the

confirmed Plan.  The status report shall be served on the United States Trustee, the twenty largest

unsecured creditors, and those parties who have requested special notice. Further status reports

shall be filed every 120 days and served on the same entities.

The reorganized debtor's post-confirmation status reports shall reflect all income and

disbursements for each quarter or portion thereof while the case remains open, and the

reorganized debtor shall timely pay U.S. Trustee Quarterly Fees pursuant to 28 U.S.C.

§ 1930(a)(6).

**E.      Post-Confirmation Conversion/Dismissal.**

A creditor or party in interest may bring a motion to convert or dismiss the case under

1112(b), after the Plan is confirmed, if there is a default in performing the Plan.  If the Court

orders, the case converted to Chapter 7 after the Plan is confirmed, then all property that had been

property of the Chapter 11 estate, and that has not been disbursed pursuant to the Plan, will revest

in the Chapter 7 estate.  The automatic stay will be reimposed upon the revested property, but

only to the extent that relief from stay was not previously authorized by the Court.

The order confirming the Plan may also be revoked under very limited circumstances. The

Court may revoke the order if the order of confirmation was procured by fraud and if the party in

interest brings an adversary proceeding to revoke confirmation within 180 days after the entry of

the order of confirmation.

**F.      Final Decree.**

Once the estate has been fully administered as referred to in Bankruptcy Rule 3022, the

Debtor, shall file a motion with the Court to obtain a final decree to close the case.

Dated: ~~November 23, 2010~~March 5, 2011                                **Lewis R. Landau**
                                                                        **Attorney at Law**

                                                      By:*/s/ Lewis R. Landau*
                                                      Lewis R. Landau
                                                      Attorney for Debtor

In re: Valley MHP, LLC

CHAPTER: 11

Debtor(s).

CASE NUMBER: 1:10-bk-20599 GM

**NOTE**: When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on a CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

23564 Calabasas Road, Suite 104
Calabasas, CA 91302

A true and correct copy of the foregoing document described as  Redlined First Amended Disclosure Statement and Plan  will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d), and **(b)** in the manner indicated below:

**I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** - Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document.  On  3/5/11   I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email addressed indicated below:

☑ Service information continued on attached page

**II.  SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served):
On _____  I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follow.  Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on  3/5/11   I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method) by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.
 Judge Mund, US Bankruptcy Court, 21041 Burbank Blvd., Suite 342, Woodland Hills, CA 91367
 (Hand delivery on 3/7/11)

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| 3/5/11 | Lewis R. Landau | /s/ Lewis R. Landau |
|--------|-----------------|----------------------|
| *Date* | *Type Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                                           **F 9013-3.1**

| In re: Valley MHP, LLC | | CHAPTER: 11 |
| | Debtor(s). | CASE NUMBER: 1:10-bk-20599 GM |

**<u>ADDITIONAL SERVICE INFORMATION</u> (if needed):**

NEF Service List (category I):

Scott C Clarkson on behalf of Creditor Remedy Investors, LLC
sclarkson@lawcgm.com

Glen Dresser on behalf of Creditor Community Commerce Bank
gombd@aol.com

Christine M Fitzgerald on behalf of Creditor Remedy Investors, LLC
cfitzgerald@scckg.com

Lewis R Landau on behalf of Debtor Valley MHP, LLC.
lew@landaunet.com

Eve A Marsella on behalf of Creditor Remedy Investors, LLC
emarsella@lawcgm.com

John E Nuelle on behalf of Interested Party Courtesy NEF
jnuelle@greenhall.com

Robert Reganyan on behalf of Debtor Valley MHP, LLC.
reganyanlawfirm@gmail.com

S Margaux Ross on behalf of U.S. Trustee United States Trustee (SV)
margaux.ross@usdoj.gov

United States Trustee (SV)
ustpregion16.wh.ecf@usdoj.gov

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009                                                                                                          **F 9013-3.1**