1   **Lewis R. Landau, Esq.** (SBN 143391)
    **Attorney at Law**
2   23564 Calabasas Road, Suite 104
    Calabasas, CA 91302
3   Voice and Fax: (888)822-4340

4   Attorney for Reorganized Debtor

5

6                 **UNITED STATES BANKRUPTCY COURT**

7                 **CENTRAL DISTRICT OF CALIFORNIA**

8                 **SAN FERNANDO VALLEYDIVISION**

9

10  In re                                    Case No.:  1:10-bk-20599 GM
                                             Chapter 11
11  Valley MHP, LLC,
                                             **REPLY IN SUPPORT OF MOTION FOR**
12              Debtor,                       **FINAL DECREE AND IN OPPOSITION TO**
                                             **ENTRY OF ORDER FOR RELIEF FROM**
13                                           **STAY FILED BY REMEDY INVESTORS,**
                                             **LLC**
14
                                             Date:  August 30, 2011
15                                           Time: 10:00 a.m.
                                             Place: Courtroom 303; Judge Mund
16                                                  US Bankruptcy Court
                                                   21041 Burbank Blvd, 3rd Floor
17                                                  Woodland Hills, California

18

19          Valley MHP, LLC ("Reorganized Debtor") herein replies to the "Objection to Debtor's

20  Motion for Entry of Order of Final Decree Closing Chapter 11 Case" [docket # 97] ("Objection to

21  Final Decree") as well as the "Submission of Declaration of Uncured Default by Kyle Jeffers"

22  [docket # 96] ("Uncured Default Declaration") both filed by Remedy Investors, LLC ("Remedy")

23  as follows:

24          1.      Remedy opposes entry of a final decree contending the Reorganized Debtor has

25  defaulted on its plan obligations.  Remedy's position is factually wrong.  In the Objection to Final

26  Decree and Uncured Default Declaration, Remedy contends that the Debtor wired a payment to

27  Remedy on August 15, 2011, three days after the August 12, 2011 cure deadline.  However, the

28  Debtor did not wire funds to Remedy.  Instead, the Debtor did in fact deposit a check to

                                        -1-

Remedy's account before 5:00 p.m. on August 12, 2011 as required by the stipulation.  *See*,
Exhibit 4 hereto.  The Declaration of Mark Magna attached hereto fully details the Reorganized
Debtor's plan performance.  As set forth therein and the exhibits thereto, the Debtor is not in
default.

2.    Even if there was some technical default by virtue of the Debtor's August 12, 2011
deposit of a check versus payment by wire, the Debtor has now cured that default as well.  The
Debtor has established a regular wire transfer transaction for the Remedy payment.  *See*, Exhibit 5
hereto.  Furthermore, California law rejects draconian default and foreclosure remedies that are
the "functional equivalent of employing a blunderbuss to kill a gnat."  *See*, Baypoint Mortgage
Corp. v. Crest Premium Real Estate Investments Retirement Trust, 168 Cal. App. 3d 818, 831
(1985) (rejecting default triggering foreclosure based on payment made during grace period as
minor default excused by equity).  Here, the Reorganized Debtor timely deposited a check to
Remedy's account on August 12, 2011.  Remedy cannot be permitted to employ a technicality to
re-impose $82,153.83 of conditionally waived default interest.  The Reorganized Debtor cannot
cure that additional $82,153.83 amount and a Remedy foreclosure based thereon will destroy the
Debtor's reorganization.

3.    Likewise, Remedy also improperly requests entry of an order for relief from stay.
The Reorganized Debtor's plan Effective Date was August 1, 2011 and the stay is now
terminated.  Thus, there is no stay.  The Debtor's plan controls and Remedy will be in contempt
of the confirmation order if it proceeds with foreclosure based on the current status.

*Wherefore*, the Reorganized Debtor prays for an order of the Court entering a final decree
closing the chapter 11 case and for such other and further relief as the Court deems just and
proper.

Dated:  August 23, 2011

**Lewis R. Landau**
**Attorney at Law**


By:*/s/ Lewis R. Landau*
Lewis R. Landau
Attorney for Reorganized Debtor

## DECLARATION OF MARK MAGNA

I, Mark Magna, do hereby declare:

1.    I am the president of Markest, Inc.  Markest, Inc. is the managing member of Valley MHP, LLC ("Debtor").  I have personal knowledge of the facts contained herein.  On August 25, 2010, the Debtor filed its voluntary chapter 11 petition commencing this case.  I am providing this declaration in support of the Debtor's motion to close its chapter 11 case and in response to the arguments by Remedy Investors, LLP ("Remedy") that the Debtor is in default of its plan obligations to Remedy.

2.    The Debtor confirmed its chapter 11 plan by order entered June 8, 2011 and the plan Effective Date was August 1, 2011.  Remedy's plan treatment and payment requirements are contained in a stipulation and amortization schedule attached to the Disclosure Statement [docket # 66] as Exhibit 2.  For convenience, the Remedy stipulation and first page of the Remedy payment schedule are collectively attached hereto as Exhibit 1.

3.    As set forth in the Remedy stipulation, the plan requires that the Debtor pay Remedy $9,354.58 on the first of the month starting July 1, 2011.  If the Debtor failed to pay by the first of the month, then Remedy must provide a 10 day cure notice and if the payment is not delivered to Remedy's bank by 5:00 p.m. on the 10th day after notice, then the Debtor is in default.

4.    The cure period contained in the stipulation was a critically important term during the Remedy negotiations and the Debtor is fully entitled to the benefits thereof.  In fact, the consequences of failing to cure within the 10 day notice period are severe.  If a payment default is not timely cured, then $82,153.83 of conditionally waived default amounts are automatically reinstated. *See*, Exhibit 1 at internal page 9:14-19.  Since the Debtor cannot afford to pay the waived default amounts, an uncured event of default can destroy the Debtor's ability to consummate its plan.

5.    Pursuant to the Remedy stipulation and plan, the Debtor requested payment instructions from Remedy.  Those instructions were received on July 6, 2011, after the payment deadline for the July 1, 2011 payment.  A true and correct copy of Remedy's payment instructions are attached as Exhibit 2 (redacted per court rules).

6.     Remedy served notice of a payment default on July 5, 2011 [docket # 92] and the Debtor timely paid the July, 2011 payment before 5:00 p.m. on July 15, 2011. A true and correct copy of the Remedy default notice, the Debtor's July 15, 2011 payment and bank receipt are collectively attached hereto as Exhibit 3.

7.     Remedy served notice of a payment default on August 2, 2011 [docket # 94]. The Debtor thereafter timely delivered a check to Remedy's bank before 5:00 p.m. on August 12, 2011 curing the payment default. A true and correct copy of Remedy's default notice, the Debtor's August 12, 2011 payment and bank receipt are collectively attached hereto as Exhibit 4. The August payment bank receipt reflects form bank notations referencing receipt after 4:00 p.m. Although received after 4:00 p.m., the payment was delivered to Remedy's bank (as required by the stipulation) before 5:00 p.m. on August 12, 2011.

8.     I am now aware that Remedy is claiming the failure to pay by wire transfer is an additional default, although no notice of default has been provided relating to the method of payment. Consequently, an Electronic Funds Transfer ("EFT") has been established through the Debtor's bank. True and correct copies of bank EFT documents are attached hereto as Exhibit 5.

9.     Based on the foregoing, I do not believe that the Debtor is in default under the plan or the Remedy stipulation. Remedy only claimed payment defaults in its July and August notices of default and those defaults were timely cured by 5:00 p.m. on the 10th day after such notice. As the Debtor's plan has become effective, the Debtor intends to enforce its rights against Remedy should Remedy take any action on an alleged default based on the July and August, 2011 payments.

    I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

    Executed this 23rd day of August, 2011 at Los Angeles, California.

Mark Magna

-2-              4

# EXHIBIT 1

1  **Lewis R. Landau** (CA Bar No. 143391)
   **Attorney at Law**
2  23564 Calabasas Road, Suite 104
   Calabasas, California 91302
3  Voice & Fax: (888)822-4340
   Email: Lew@Landaunet.com
4
   Attorney for
5  Valley MHP, LLC

6

7                  **UNITED STATES BANKRUPTCY COURT**

8                  **CENTRAL DISTRICT OF CALIFORNIA**

9                  **SAN FERNANDO VALLEY DIVISION**

10

11  In re                              Case No.: 1:10-bk-20599 GM

12  Valley MHP, LLC.                   Chapter 11

13          Debtor and Debtor in       **STIPULATION REGARDING INTERIM**
            Possession.                **USE OF CASH COLLATERAL FROM**
14                                     **MARCH 1, 2011 TO MAY 31, 2011, MOTION**
                                       **FOR RELIEF FROM STAY, AND**
15                                     **ADEQUATE PROTECTION**

16                                     Date:    March 8, 2011
                                       Time:    10:00 a.m.
17                                     Place:   Courtroom 303; Judge Mund
                                                21041 Burbank Blvd
18                                              Woodland Hills, CA 91367

19

20          Valley MHP, LLC, Chapter 11 Debtor and Debtor in Possession (the "Debtor") on one

21  hand, and Remedy Investors, LLC, successor in interest to Union Bank, on the other hand

22  (hereinafter "Lender"), enter into this Stipulation Regarding Use of Cash Collateral, Motion for

23  Relief from Stay, and Adequate Protection ("Stipulation") based upon the following facts:

24          1.      Valley MHP, LLC (the "Debtor") is the debtor in the above captioned case. The

25  Debtor filed its voluntary chapter 11 petition commencing its case on August 25, 2010. The

26  Debtor continues to manage and operate the estate as a Debtor in Possession. No creditors'

27  committee has been appointed in this case.

28

2.     The Debtor holds title to real property located at 7936 Woodley Avenue, Los Angeles, California 91406 ("Subject Property"). The Subject Property is a multifamily mobile home park with approximately 27 spaces.

3.     Hedamar Development, Inc., a California corporation ("Hedamar") owns 100% of the equity interests in the Debtor.

4.     On July 21, 2006, Hedamar executed a "Promissory Note Secured by Deed of Trust (Adjustable Rate Note – Fixed / 6 Mo. Libor IO)" ("the Note"), by which it promised to pay Lender the principal sum of $960,000.00 plus interest on the unpaid principal. The Note is secured by a first deed of trust on the Property and an assignment of rents and fixture filing pursuant to the "Deed of Trust, Security Agreement, Assignment of Rents and Fixture Filing" (the "Deed of Trust").

5.     Thus, Lender has a first deed of trust with assignments of rents clauses on the Subject Property. The rents, royalties, issues, profits, security deposits, and income of the Subject Property (the "Cash Collateral") constitute cash collateral within the meaning of 11 U.S.C. section 363(a). Lender is entitled to the benefits of § 506(b) of the Bankruptcy Code. By virtue of Lender's perfected security interests in the Cash Collateral, Lender has an interest in the Cash Collateral within the meaning of 11 U.S.C. § 363(b).

6.     After the Debtor failed to perform under the terms of the Note and Deed of Trust, Lender elected to declare all sums immediately due and payable. As of the date that this Stipulation was signed on behalf of Lender, Lender contends that the principal balance of the loan secured by the Subject Property was $952,608.90 plus interest, applicable late charges, foreclosure fees and costs, collection costs, or attorney's fees and costs recoverable under the terms of the Note and Deed of Trust (the "Indebtedness") and that all such amounts were due and payable.

7.     Lender contends that it has duly performed any conditions precedent on its part to be performed under the Note and Deed of Trust.

8.     The Debtor represents that other than real estate taxes, no consensual liens or encumbrances senior to those of Lender exist against the Subject Property and acknowledges that Lender has specifically relied on this representation in its consent to this Stipulation. Invalidity of

1   this representation is a specific event of default under this Stipulation, giving rise to the Lender's

2   remedies set forth below.

3      9.  On September 2, 2010, Lender served on the Debtor its *Notice of Non-Consent of*

4   *Use of Cash Collateral* [Docket No. 10] (the "Notice of Non-Consent"), which gave notice that it

5   did not consent to the Debtor's use of Cash Collateral and perfected and made choate "all rights of

6   Lender in the rents, issues, and profits of the property described in the Deed of Trust, Security

7   Agreement, Assignment of Rents and Fixture Filing ('Deed of Trust')." Notice of Non-Consent at

8   p. 1. The Debtor does not dispute that Lender has a fully perfected lien on Subject Property and

9   the Cash Collateral.

10      10.  On September 14, 2010, Lender filed its *Motion for Relief from Automatic Stay*

11   *under 11 U.S.C. § 362* (the "Motion") [Docket No. 14] with respect to the Subject Property.

12      11.  On October 8, 2010, representatives of Lender and the Debtor executed that certain

13   Loan Modification Term Sheet (the "Term Sheet"), a true and correct copy of which is attached

14   hereto as **Exhibit "A."** Pursuant to the Term Sheet, if it were approved by the Court, the Debtor

15   was required to take certain actions by certain deadlines. However, Lender and the Debtor have

16   agreed to cancel the Term Sheet (if it was binding) and to enter this Stipulation to reflect their

17   agreement regarding the matters addressed herein.

18      12.  At the hearing on the Motion and status conference, which occurred on October 12,

19   2010, the Bankruptcy Court determined and stated on the record that this case is a single asset real

20   estate ("SARE") case.

21      13.  The Debtor filed the *Debtor's Original Chapter 11 Plan* [Docket No. 38] (the

22   "Plan") and *Debtor's Original Disclosure Statement Describing Original Chapter 11 Plan*

23   [Docket No. 39] (the "Disclosure Statement") on November 23, 2010. The parties have entered a

24   stipulation to continue the hearings on the Motion and the Disclosure Statement to April 12, 2011.

25      14.  The Debtor asserts that it needs to use the Cash Collateral to maintain the Subject

26   Property and asserts that by doing so, the Subject Property will continue to generate rents.

27      15.  Prior to execution of this Stipulation, Lender has agreed to certain specific

28   payments of Cash Collateral submitted to Lender by the Debtor in writing and otherwise has not

1    agreed to use of Cash Collateral.

2        16.    The Debtor and Lender negotiated and entered into this Stipulation to allow the

3    Debtor's interim use of Cash Collateral for an initial period commencing March 1, 2011 through

4    May 31, 2011.

5        17.    Lender and the Debtor have also agreed to additional terms and conditions, which

6    are described herein, in order to provide adequate protection to Lender and to ensure that Lender's

7    security is not affected.

8        *NOW THEREFORE*, the Debtor and Lender enter into following agreement regarding

9    Cash Collateral, adequate protection of Lender, and the other issues addressed herein, on the

10   following terms:

11       1.    Definitions.

12           A.    The term "cash collateral" shall have the same meaning as provided by 11

13       U.S.C. section 363(a).

14           B.    The terms "rents," "royalties," "issues," "profits," "security deposits," and

15       "income" shall have the same meanings as provided by the Deed of Trust.

16       2.    Existing Agreements.

17       Except as modified by this Stipulation, all terms, conditions and provisions of the Note and

18   Deed of Trust shall remain in full force and effect.  This Stipulation, the Term Sheet (to the extent

19   it was enforceable) and any other document executed by Debtor and Lender shall be considered to

20   supplement and not replace any agreement previously entered into between Lender and the

21   Debtor.  The recitals set forth above are incorporated by this reference.

22       3.    The Debtor acknowledges that it is not aware of any grounds to challenge the

23   validity, enforceability, or priority of the Lender's pre-petition claims or liens against the Subject

24   Property.

25       4.    Terms and Conditions for the Use of Cash Collateral.

26           A.    Subject to the terms and conditions herein, the Debtor shall be entitled to

27       use the Cash Collateral and to pay certain of the Debtor's actual and necessary operating

28       expenses incurred after the petition date as set forth in the budget, which is attached hereto

4                                                                                    9

as **Exhibit "B"** (the "Budget"), through the term that this Stipulation provides for cash collateral.

B.    All Cash Collateral heretofore collected and in the possession or under the control of the Debtor, and all Cash Collateral hereafter collected by the Debtor, shall be deposited into a debtor in possession bank account (the "Cash Collateral Account") and kept separate from any other funds of the Debtor.

C.    From the Cash Collateral Account, the Debtor may transfer to its general account and pay those actual expenses set forth on Exhibit B, which are incurred in the ordinary course of the Debtor's business and which are consistent with the terms of this Stipulation.

D.    Without the written consent of the Lender, (a) the total payments for monthly expenses shall not exceed five percent (5%) of the cumulative total for all categories of expenses set forth in Exhibit B, and (b) the Debtor's actual expenditures shall not exceed the budgeted expenditures in the Budget by more than five percent (5%) per line item in Exhibit B. No other payments or expenditures shall be made except as the Lender may specifically authorize in writing. Any unused sum remaining in any one category of expense may not be rolled over to a subsequent month, unless such rollover is because payment of an expense category was not yet due or made in such prior month but such expense was nonetheless incurred.

5.    The Debtor further agrees that any turnover to the Lender of the Cash Collateral pursuant to this Stipulation is voluntarily made. The Debtor agrees that any turnover to Lender of any Cash Collateral and any application of the same by Lender to the Indebtedness shall not be deemed, in any manner, to constitute a setoff or other "action" as that term is used or defined in section 726 of the California Code of Civil Procedure, constitute a violation of the "one action rule" or be considered an effort by the Lender to collect a deficiency judgment.

6.    Post-Petition Liens; Adequate Protection.

A.    By virtue of, among other things, the provisions of the Deed of Trust and the Notice of Non-Consent, the Lender asserts that it holds a valid, duly perfected,

1    enforceable and non-avoidable senior-most security interest in the Cash Collateral and the

2    Subject Property. As further partial adequate protection for the continued use by the

3    Debtor of the cash collateral as provided for under this Stipulation, the Lender shall be

4    granted a valid, duly perfected, enforceable and non-avoidable replacement lien and

5    security interest of the same priority in all post-petition Cash Collateral. The Debtor shall

6    execute such documents as the Lender may require to perfect its security interest hereunder

7    and/or under the Deed of Trust or other agreement between the Debtor and Lender, but

8    entry of the court's order approving this Stipulation shall constitute a validly perfected first

9    lien and security interest upon the Cash Collateral generated after the petition date and no

10    filing, recordation or other act in accordance with any applicable local, state or federal law

11    shall be necessary to create or perfect such lien and security interest.

12          B.      The post-petition liens in favor of the Lender shall secure repayment to the

13    Lender of the actual amount of Cash Collateral spent by the Debtor from and after the

14    petition date. The post-petition liens granted hereby shall not in any way reduce, eliminate

15    or supersede any security interest previously granted to the Lender, but shall instead be a

16    continuation thereof, from and after the petition date.

17    7.      Reporting Requirements.

18    The Debtor shall prepare and maintain and upon reasonable notice provide to the Lender

19    for examination the following records:

20          A.      All records required to be kept or maintained by the Debtor, including those

21    required by the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the rules of

22    this Court and the United States Trustee.

23          B.      All records required to be kept or maintained by the terms and conditions of

24    this Stipulation, and any other agreement executed by the Debtor in favor of the Lender.

25          C.      In addition, the Debtor shall provide to the Lender the following reports in a

26    timely manner.

27                1.      On or before execution of this Stipulation, the Debtor shall provide

28                the Lender with copies of all non-confidential documents filed by the Debtor with

6                                                                          11

the Office of the U.S. Trustee.

    2.    Monthly, the Debtor shall account to Lender for receipts, disbursements and accruals for the prior month. Such accounting shall include (but not be limited to) a rent roll and the related amounts received from each tenant.

    3.    The Debtor shall also provide the Lender in a timely and prompt fashion all reports or other information required by the Note, the Deed of Trust, and any other agreement executed by the Debtor in favor of the Lender or any other agreement which may in the future be executed by the Debtor in favor of the Lender.

D.    Inspection Rights. The Lender is authorized, in its discretion, to reasonably audit the Debtor's books and records, and to inspect the Subject Property. The Lender or its designated representative or agent shall be entitled on reasonable notice to inspect the books and records of the Debtor at any time during normal business hours. The Lender shall be entitled to have its appraiser visit the Subject Property upon reasonable notice to inspect and appraise the Subject Property.

E.    In addition to the foregoing inspection rights, the Lender shall have and be entitled to all inspections or other information required by the Note, the Deed of Trust, and any other agreement executed by the Debtor in favor of the Lender or any other agreement which may in the future be executed by the Debtor in favor of the Lender.

F.    Insurance. The Debtor shall maintain insurance in accordance with the requirements of the Office of the United States Trustee at all times for the Subject Property and shall provide evidence of the same to the Lender within 15 days after Lender's written request therefor.

8.    Agreement regarding Loan Repayment.

A.    The Debtor and Lender agree to the following:

    a.    The Debtor and Lender acknowledge that the Term Sheet has been canceled and is of no force or effect.

b.  The Debtor and Lender agree that when they entered the Term Sheet, certain repairs were needed to make capital improvements to the electrical system on the Subject Property.  The Debtor and Lender reserve their rights with respect to whether such repairs have been completed satisfactorily.  If the Housing Authority approves the repairs to the electrical system as adequate to allow all of the spaces to be used by tenants, then Lender agrees that the Debtor has cured any default that was related to the electrical system; provided, however, that this shall not waive or otherwise affect any default(s), which are addressed below, and defaults that occur hereafter will not be waived by the Debtor complying with this subparagraph.

c.  The Debtor and Lender agree to the schedule of payments listed in **Exhibit "C"** (which is attached hereto).  That schedule is summarized as follows:

    i.  From January 1, 2010 through July 1, 2011, the total amount of unpaid nondefault payments ($ $99,528), legal fees to be paid by Debtor ($20,000), and unpaid escrow account balance ($4,576.29) will be $$124,103.98 (the "Past Due Balance").

    ii.  Beginning on July 1, 2011 and continuing through December 1, 2013, the Debtor shall pay Lender monthly payments equal to $5,854.58, which is interest of 7.375% on the outstanding principal balance ($952,608.90) (the "Interest Only Monthly Payment") plus the additional amounts described in the following subparagraph iii, and beginning on January 1, 2014 and continuing through June 1, 2014, the Debtor shall pay Lender monthly payments equal to $$7,360.16, which is principal and interest under the Note, plus the additional amounts described in the following subparagraph iii.

    iii.  Beginning on July 1, 2011 and continuing until the Past Due Balance ($124,103.98) is paid in full, the Debtor shall pay Lender $3,500 per month (or if less, the unpaid amount of the Past Due

1   Balance) (the "Additional Payment") in addition to the applicable

2   payment due under paragraph i above; the applicable amount due

3   each month is the "Monthly Payment" herein. Thus, from July 1,

4   2011 through December 1, 2013, the Monthly Payment will be $

5   $9,354.58, and from January 1, 2013 through May 1, 2014, the

6   Monthly Payment will be $ $10,860.16, and the Monthly Payment

7   due onJune 1, 2014 will be $ $7,430.68. If the Debtor makes all of

8   the Monthly Payments required by the foregoing schedule (from

9   July 1, 2011 through June 1, 2014) on time or within the cure period

10  provided by this Stipulation, then upon the payment of the Unpaid

11  Balance in full under the terms and conditions provided herein,

12  Lender waives the default interest, attorneys' fees in excess of

13  $20,000, trustee's fees, and late fees, which will total $ 82,153.83

14  as of June 1, 2011 (the "Default Amounts Due"). **If any Monthly**

15  **Payment is late and not timely cured as required by Paragraph**

16  **9.C below, then the Default Amounts Due will not be waived by**

17  **Lender, and the Default Amounts Due will be added to the**

18  **unpaid principal owed to Lender under the Note and Lender**

19  **will be entitled to relief from stay as provided below.**

20  iv.  Beginning on July 1, 2014 and continuing until the outstanding

21  principal and related interest are paid in full, the Debtor shall pay

22  Lender monthly payments equal to $7,360.16, which is the fully

23  amortized payment that includes principal and interest under the

24  Note (the "Amortized Monthly Payment"). Other than as expressly

25  provided above, the Note and Deed of Trust shall not be amended.

26  The Note and Deed of Trust shall survive and continue in full force

27  and effect.

28

9

<u>14</u>

d. All payments hereunder (such as Monthly Payments) by the Debtor to Lender shall be made by ACH or wire transfer and will be effective when received in Lender's account.

e. This Stipulation shall be effective upon entry of an order approving this Stipulation.

f. The Debtor shall file an amended Plan and an amended Disclosure Statement that reflect this Stipulation and incorporate this Stipulation as an exhibit to the Plan by March 5, 2011 and shall seek approval thereof at a hearing set for April 12, 2011. Upon a Plan that is consistent with this Stipulation becoming effective, all defaults arising under the Note and Deed of Trust shall be deemed cured and/or waived as of the effective date of such Plan; provided, however, that the fact that such a Plan becomes effective shall <u>not</u> be deemed a cure or waiver of any default by the Debtor or any right or remedy of Lender under this Stipulation. Thus, the fact that such a Plan becomes effective will not cure or waive any default by the Debtor in failing to make any Monthly Payment timely and, if the Debtor fails to timely cure any late Monthly Payment, will not waive the right of Lender to the Default Amounts Due (as set forth above) and to obtain relief from stay as provided below.

B. The foregoing requirements in Paragraph A above, together with the Debtor's representation that other than real estate taxes, no consensual liens or encumbrances senior to those of Lender exist against the Subject Property, are the "Conditions" herein.

9. Default; Remedies Upon Default.

A. Any failure of the Debtor to perform fully or satisfy the promises, duties, covenants, provisions or terms of this Stipulation (including but not limited to the Conditions), the Note, the Deed of Trust, or any other agreement between the parties, or any breach of a representation or warranty therein, shall be an event of default under this

10

Stipulation unless timely cured. In addition to the other defaults identified herein, each of the following shall also constitute a default:

    a. entry of an order by the Bankruptcy Court converting or dismissing Debtor's Bankruptcy case or appointing a Chapter 11 Trustee or Chapter 7 Trustee;

    b. reversal, vacatur, stay amendment, supplementation or other modification of this Stipulation (without Lender's consent) in any manner which shall, in the sole opinion Lender, materially and adversely affect the rights of Lender hereunder, or shall materially and adversely affect the priority of any or all Lender's collateral or security interests;

    c. entry of an order granting any party relief from the automatic stay with respect to the Subject Property or Cash Collateral;

    d. if any person or entity shall have obtained an order permitting the use of Lender's Cash Collateral without Lender's express written consent; or

    e. if the Debtor shall knowingly furnish or knowingly make any false, inaccurate or materially incomplete representation, warranty, certificate, report or summary in connection with or pursuant to this Stipulation.

    B.    Any default under this Stipulation or any other agreement between the parties, shall constitute a "default" under all agreements between the parties.

    C.    In the event of a default, Lender may provide the Debtor with written notice stating that a default has occurred, which notice may be given by providing both facsimile transmission to the Debtor at (323) 720-1922 and email to the Debtor at mark@markestinc.com and trslawyer@prodigy.net and, until entry of a final decree in the Debtor's case, to counsel for the Debtor by facsimile to (888)822-4340 or email to lew@landaunet.com; such facsimile numbers and email addresses may be updated by the Debtor or its counsel by sending email to Lender at jeffers@coastalcra.com or any email address or facsimile number that Lender provides to the Debtor and its counsel at such

1  email addresses. Upon the failure of the Debtor to cure such default by 5:00 p.m. on the

2  tenth calendar day following the day on which such notice is given:

3      (a) the Debtor's right under this Stipulation to use cash collateral shall

4      terminate, and, unless the Court orders otherwise, the Debtor shall immediately

5      stop using the Cash Collateral and the Debtor shall immediately sequester all Cash

6      Collateral received, i.e., no deductions for the expenses identified on Exhibit B; and

7      (b) Lender shall have the right to obtain relief from the automatic stay with

8      respect to the Subject Property for all purposes solely by filing with the Court and

9      serving on the Debtor's counsel a declaration that Lender served the Debtor (or its

10      counsel) a notice of such default and such default was not cured as required by this

11      Stipulation, in which case no further hearing shall be required and the stay shall be

12      lifted upon entry of the related order.

13      10.    Bankruptcy Court Approval.

14  The Debtor shall file with the bankruptcy court an appropriate emergency motion seeking

15  approval of this Stipulation on or before March 5, 2011, and shall otherwise diligently seek

16  approval thereof.

17      11.    Term for use of Cash Collateral.

18  Upon the entry of an order by the bankruptcy court approving the terms of this Stipulation,

19  the Debtor's right to use the Lender's cash collateral shall become effective as of March 1, 2011

20  and shall continue in effect until the earlier of (a) May 31, 2011 (the "Termination Date"), (b) an

21  event of default, or (c) further order of the Court regarding Cash Collateral.

22      12.    Reservation of Rights.

23  Lender shall have the right to waive any of the rights, remedies or powers granted herein

24  and shall have no obligation or duty to any other person or party with respect to the exercise of

25  said rights, remedies or duties. Delay in or failure to exercise any rights, remedies or duties shall

26  not subject Lender to any liability to any other person or party, nor shall any other person or party

27  rely upon, or in any way assert as a defense to any obligation owing to Lender such delay or

28  failure. All of Lender's rights and remedies in law and equity are specifically reserved.

1       13.    Nothing contained in this Stipulation or the order approving this Stipulation shall

2   be deemed or construed to waive, reduce or otherwise diminish the rights of the Lender to seek

3   additional or different adequate protection of its interest under the Note and Deed of Trust, or to

4   take any other action in this Chapter 11 case including but not limited to seeking relief from stay

5   at an earlier date.  Nothing contained in this Stipulation or the order approving this Stipulation

6   shall be deemed or construed to be an admission that the Lender is adequately protected.

7       15.    The Debtor and Lender are hereby authorized to execute any documentation

8   necessary to effectuate and/or carry out the terms and conditions of this Stipulation

9       16.    This Stipulation may be executed by the parties' counsel on their behalf in any

10   number of counterparts, each of which shall be deemed an original instrument for all purposes and

11   all of which together shall constitute this Stipulation.

12       17.    The Bankruptcy Court shall retain exclusive jurisdiction over the subject matter of

13   this Stipulation and the related order in order to resolve any disputes in connection with the rights

14   and duties specified above.

15       18.    The provisions of this Stipulation regarding Cash Collateral may be further

16   extended by the Debtor and Lender in a writing filed with the Bankruptcy Court without a further

17   order of the Bankruptcy Court.  Lender's agreement to any such extension shall be in its sole and

18   absolute discretion.

19       19.    This Stipulation shall be valid and binding on, and will inure to the benefit of, the

20   successors and assigns of the Debtor and Lender and any Chapter 7 trustee (if one is appointed in

21   the Debtor's case), notwithstanding any conversion of this case to chapter 7.

22       *NOW THEREFORE*, the parties stipulate to the foregoing.

23   Dated: March_4_, 2011             **Lewis R. Landau**

24                                     **Attorney at Law**

25

26                                   By: *_/s/ Lewis R. Landau_*
                                   Lewis R. Landau

27                                   Attorney for Debtor
                                   lew@landaunet.com

28   ///

1   Dated: March __4__, 2011

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SMITH | CAMPBELL | CLIFFORD | KEARNEY |
GORE, A Professional Law Corporation


By: _Christine M. Fitzgerald_
Barry R. Gore
Christine M. Fitzgerald
Attorney for Remedy Investors, LLC

**REMEDY INVESTORS**
**WOODLEY RV PARK**
**LOAN MODIFICATION PROPOSAL**

| | | |
|---|---|---|
| Current Principal | $ 952,608.90 | |
| Payment on Past Due | $ 3,500.00 | |
| Interest Rate | 7.375% | |

| Payment Due Date | Past Due Amount | Actual Payments | Outstanding Past Due | Payment Due Date | Accural | Interest Payments | Principal Payments | Outstanding Balance | Total Payment |
|---|---|---|---|---|---|---|---|---|---|
| Legal Costs | | | $ 20,000.00 | | | | | | |
| Tax Advance | $ 4,576.29 | | $ 24,576.29 | | | | | $ 952,608.90 | |
| 2/1/2010 | $ 5,854.57 | | $ 30,430.86 | 2/1/2010 | | | | $ 952,608.90 | $ - |
| 3/1/2010 | $ 5,854.57 | | $ 36,285.43 | 3/1/2010 | | | | $ 952,608.90 | $ - |
| 4/1/2010 | $ 5,854.57 | | $ 42,140.00 | 4/1/2010 | | | | $ 952,608.90 | $ - |
| 5/1/2010 | $ 5,854.57 | | $ 47,994.57 | 5/1/2010 | | | | $ 952,608.90 | $ - |
| 6/1/2010 | $ 5,854.57 | | $ 53,849.14 | 6/1/2010 | | | | $ 952,608.90 | $ - |
| 7/1/2010 | $ 5,854.57 | | $ 59,703.71 | 7/1/2010 | | | | $ 952,608.90 | $ - |
| 8/1/2010 | $ 5,854.57 | | $ 65,558.28 | 8/1/2010 | | | | $ 952,608.90 | $ - |
| 9/1/2010 | $ 5,854.57 | | $ 71,412.85 | 9/1/2010 | | | | $ 952,608.90 | $ - |
| 10/1/2010 | $ 5,854.57 | | $ 77,267.42 | 10/1/2010 | | | | $ 952,608.90 | $ - |
| 11/1/2010 | $ 5,854.57 | | $ 83,121.99 | 11/1/2010 | | | | $ 952,608.90 | $ - |
| 12/1/2010 | $ 5,854.57 | | $ 88,976.56 | 12/1/2010 | | | | $ 952,608.90 | $ - |
| 1/1/2011 | $ 5,854.57 | | $ 94,831.13 | 1/1/2011 | | | | $ 952,608.90 | $ - |
| 2/1/2011 | $ 5,854.57 | | $ 100,685.70 | 2/1/2011 | | | | $ 952,608.90 | $ - |
| 3/1/2011 | $ 5,854.57 | | $ 106,540.27 | 3/1/2011 | | | | $ 952,608.90 | $ - |
| 4/1/2011 | $ 5,854.57 | | $ 112,394.84 | 4/1/2011 | | | | $ 952,608.90 | $ - |
| 5/1/2011 | $ 5,854.57 | | $ 118,249.41 | 5/1/2011 | | | | $ 952,608.90 | $ - |
| 6/1/2011 | $ 5,854.57 | | $ 124,103.98 | 6/1/2011 | | | | $ 952,608.90 | $ - |
| 7/1/2011 | | $ (3,500.00) | $ 120,603.98 | 7/1/2011 | $ 5,854.58 | $ (5,854.58) | | $ 952,608.90 | $ 9,354.58 |
| 8/1/2011 | | $ (3,500.00) | $ 117,103.98 | 8/1/2011 | $ 5,854.58 | $ (5,854.58) | | $ 952,608.90 | $ 9,354.58 |
| 9/1/2011 | | $ (3,500.00) | $ 113,603.98 | 9/1/2011 | $ 5,854.58 | $ (5,854.58) | | $ 952,608.90 | $ 9,354.58 |
| 10/1/2011 | | $ (3,500.00) | $ 110,103.98 | 10/1/2011 | $ 5,854.58 | $ (5,854.58) | | $ 952,608.90 | $ 9,354.58 |
| 11/1/2011 | | $ (3,500.00) | $ 106,603.98 | 11/1/2011 | $ 5,854.58 | $ (5,854.58) | | $ 952,608.90 | $ 9,354.58 |
| 12/1/2011 | | $ (3,500.00) | $ 103,103.98 | 12/1/2011 | $ 5,854.58 | $ (5,854.58) | | $ 952,608.90 | $ 9,354.58 |
| 1/1/2012 | | $ (3,500.00) | $ 99,603.98 | 1/1/2012 | $ 5,854.58 | $ (5,854.58) | | $ 952,608.90 | $ 9,354.58 |
| 2/1/2012 | | $ (3,500.00) | $ 96,103.98 | 2/1/2012 | $ 5,854.58 | $ (5,854.58) | | $ 952,608.90 | $ 9,354.58 |
| 3/1/2012 | | $ (3,500.00) | $ 92,603.98 | 3/1/2012 | $ 5,854.58 | $ (5,854.58) | | $ 952,608.90 | $ 9,354.58 |
| 4/1/2012 | | $ (3,500.00) | $ 89,103.98 | 4/1/2012 | $ 5,854.58 | $ (5,854.58) | | $ 952,608.90 | $ 9,354.58 |
| 5/1/2012 | | $ (3,500.00) | $ 85,603.98 | 5/1/2012 | $ 5,854.58 | $ (5,854.58) | | $ 952,608.90 | $ 9,354.58 |
| 6/1/2012 | | $ (3,500.00) | $ 82,103.98 | 6/1/2012 | $ 5,854.58 | $ (5,854.58) | | $ 952,608.90 | $ 9,354.58 |
| 7/1/2012 | | $ (3,500.00) | $ 78,603.98 | 7/1/2012 | $ 5,854.58 | $ (5,854.58) | | $ 952,608.90 | $ 9,354.58 |
| 8/1/2012 | | $ (3,500.00) | $ 75,103.98 | 8/1/2012 | $ 5,854.58 | $ (5,854.58) | | $ 952,608.90 | $ 9,354.58 |
| 9/1/2012 | | $ (3,500.00) | $ 71,603.98 | 9/1/2012 | $ 5,854.58 | $ (5,854.58) | | $ 952,608.90 | $ 9,354.58 |
| 10/1/2012 | | $ (3,500.00) | $ 68,103.98 | 10/1/2012 | $ 5,854.58 | $ (5,854.58) | | $ 952,608.90 | $ 9,354.58 |
| 11/1/2012 | | $ (3,500.00) | $ 64,603.98 | 11/1/2012 | $ 5,854.58 | $ (5,854.58) | | $ 952,608.90 | $ 9,354.58 |
| 12/1/2012 | | $ (3,500.00) | $ 61,103.98 | 12/1/2012 | $ 5,854.58 | $ (5,854.58) | | $ 952,608.90 | $ 9,354.58 |
| 1/1/2013 | | $ (3,500.00) | $ 57,603.98 | 1/1/2013 | $ 5,854.58 | $ (5,854.58) | | $ 952,608.90 | $ 9,354.58 |
| 2/1/2013 | | $ (3,500.00) | $ 54,103.98 | 2/1/2013 | $ 5,854.58 | $ (5,854.58) | | $ 952,608.90 | $ 9,354.58 |
| 3/1/2013 | | $ (3,500.00) | $ 50,603.98 | 3/1/2013 | $ 5,854.58 | $ (5,854.58) | | $ 952,608.90 | $ 9,354.58 |
| 4/1/2013 | | $ (3,500.00) | $ 47,103.98 | 4/1/2013 | $ 5,854.58 | $ (5,854.58) | | $ 952,608.90 | $ 9,354.58 |
| 5/1/2013 | | $ (3,500.00) | $ 43,603.98 | 5/1/2013 | $ 5,854.58 | $ (5,854.58) | | $ 952,608.90 | $ 9,354.58 |
| 6/1/2013 | | $ (3,500.00) | $ 40,103.98 | 6/1/2013 | $ 5,854.58 | $ (5,854.58) | | $ 952,608.90 | $ 9,354.58 |
| 7/1/2013 | | $ (3,500.00) | $ 36,603.98 | 7/1/2013 | $ 5,854.58 | $ (5,854.58) | | $ 952,608.90 | $ 9,354.58 |
| 8/1/2013 | | $ (3,500.00) | $ 33,103.98 | 8/1/2013 | $ 5,854.58 | $ (5,854.58) | | $ 952,608.90 | $ 9,354.58 |
| 9/1/2013 | | $ (3,500.00) | $ 29,603.98 | 9/1/2013 | $ 5,854.58 | $ (5,854.58) | | $ 952,608.90 | $ 9,354.58 |
| 10/1/2013 | | $ (3,500.00) | $ 26,103.98 | 10/1/2013 | $ 5,854.58 | $ (5,854.58) | | $ 952,608.90 | $ 9,354.58 |
| 11/1/2013 | | $ (3,500.00) | $ 22,603.98 | 11/1/2013 | $ 5,854.58 | $ (5,854.58) | | $ 952,608.90 | $ 9,354.58 |
| 12/1/2013 | | $ (3,500.00) | $ 19,103.98 | 12/1/2013 | $ 5,854.58 | $ (5,854.58) | | $ 952,608.90 | $ 9,354.58 |
| 1/1/2014 | | $ (3,500.00) | $ 15,603.98 | 1/1/2014 | $7,360.16 | $ (5,854.58) | $ (1,505.58) | $ 954,114.48 | $ 10,860.16 |
| 2/1/2014 | | $ (3,500.00) | $ 12,103.98 | 2/1/2014 | $7,360.16 | $ (5,863.83) | $ (1,496.33) | $ 952,618.15 | $ 10,860.16 |
| 3/1/2014 | | $ (3,500.00) | $ 8,603.98 | 3/1/2014 | $7,360.16 | $ (5,854.63) | $ (1,505.53) | $ 951,112.63 | $ 10,860.16 |
| 4/1/2014 | | $ (3,500.00) | $ 5,103.98 | 4/1/2014 | $7,360.16 | $ (5,845.38) | $ (1,514.78) | $ 949,597.85 | $ 10,860.16 |
| 5/1/2014 | | $ (3,500.00) | $ 1,603.98 | 5/1/2014 | $7,360.16 | $ (5,836.07) | $ (1,524.09) | $ 948,073.76 | $ 10,860.16 |
| 6/1/2014 | | $ (1,603.98) | $ - | 6/1/2014 | $7,360.16 | $ (5,826.70) | $ (1,533.46) | $ 946,540.30 | $ 8,964.14 |
| 7/1/2014 | | $ - | $ - | 7/1/2014 | $7,360.16 | $ (5,817.28) | $ (1,542.88) | $ 944,997.42 | $ 7,360.16 |
| 8/1/2014 | | $ - | $ - | 8/1/2014 | $7,360.16 | $ (5,807.80) | $ (1,552.36) | $ 943,445.05 | $ 7,360.16 |
| 9/1/2014 | | $ - | $ - | 9/1/2014 | $7,360.16 | $ (5,798.26) | $ (1,561.90) | $ 941,883.15 | $ 7,360.16 |
| 10/1/2014 | | $ - | $ - | 10/1/2014 | $7,360.16 | $ (5,788.66) | $ (1,571.50) | $ 940,311.65 | $ 7,360.16 |
| 11/1/2014 | | $ - | $ - | 11/1/2014 | $7,360.16 | $ (5,779.00) | $ (1,581.16) | $ 938,730.49 | $ 7,360.16 |
| 12/1/2014 | | $ - | $ - | 12/1/2014 | $7,360.16 | $ (5,769.28) | $ (1,590.88) | $ 937,139.61 | $ 7,360.16 |
| 1/1/2015 | | $ - | $ - | 1/1/2015 | $7,360.16 | $ (5,759.50) | $ (1,600.66) | $ 935,538.95 | $ 7,360.16 |
| 2/1/2015 | | $ - | $ - | 2/1/2015 | $7,360.16 | $ (5,749.67) | $ (1,610.49) | $ 933,928.46 | $ 7,360.16 |
| 3/1/2015 | | | | 3/1/2015 | $7,360.16 | $ (5,739.77) | $ (1,620.39) | $ 932,308.07 | $ 7,360.16 |
| 4/1/2015 | | | | 4/1/2015 | $7,360.16 | $ (5,729.81) | $ (1,630.35) | $ 930,677.72 | $ 7,360.16 |
| 5/1/2015 | | | | 5/1/2015 | $7,360.16 | $ (5,719.79) | $ (1,640.37) | $ 929,037.35 | $ 7,360.16 |
| 6/1/2015 | | | | 6/1/2015 | $7,360.16 | $ (5,709.71) | $ (1,650.45) | $ 927,386.89 | $ 7,360.16 |
| 7/1/2015 | | | | 7/1/2015 | $7,360.16 | $ (5,699.57) | $ (1,660.59) | $ 925,726.30 | $ 7,360.16 |

# EXHIBIT 2

**From:** Kyle Jeffers [mailto:jeffers@coastalcra.com]
**Sent:** Wednesday, July 06, 2011 11:29 AM
**To:** Mark D. Magna
**Cc:** Sepp Dobler
**Subject:** Re: Woodley

Hi Mark,

I'm sorry but I don't recall either of the messages mentioning the wire instructions.  Regardless, I sent you a courteous reminder on July 1st that your payment was due and to let me know if you didn't have wire instructions but have not heard from you until today which is the 6th.  As per the agreement, the payments are due the first of each month and if you were attempting to make the payment I assume you would have called me. The wiring insructions are below:

Acct Name: Remedy Investors, LLC
routing #: ████1669
acct #: ████6413
First Republic Bank
431 Wilshire Blvd
Santa Monica, CA 90401
1-800-392-1407

Once payment has been received I'm happy to discuss how to best communicate going forward.

Thanks.


On Wed, Jul 6, 2011 at 9:40 AM, Mark D. Magna <mark@markestinc.com> wrote:

Kyle,

 Hope you are well and you had a nice 4th of July.

 My attorney forwarded the filing your attorney did last night.  We should talk about this moving forward so that we are not wasting any more money on attorneys.

 Also, I responded to both of your voicemails, one was about 3-4 weeks ago and one was maybe almost 2 months ago, both of which you asked me whether I have the wire instructions and I indicated in both of those voicemails to you that I do not.

 Please let me know when a good time for you to talk would be.

 Thanks,

 Mark D. Magna

mark@markestinc.com

1

(310) 963-0749

(323) 720-1922 Fax

 IMPORTANT:  This e-mail message and the attachments herein are not intended to be relied upon and, without limitation on the foregoing, shall not create, waive or modify any right, obligation or liability, or be construed to contain or be an electronic signature, to constitute a notice, approval, waiver or election, or to form, modify, amend or terminate any contract.  The information contained in this message may be material that is confidential, privileged and/or attorney work product and is intended only for the named addressee(s).  If the reader of this message is not the intended recipient (or the individual responsible for the delivery of this message to an intended recipient), please be advised that any re-use, dissemination, distribution or copying of this message is prohibited.  If you have received this message in error, please reply to the sender that you have received the message in error and then delete it.  Thank you.

 --
Kyle Jeffers
Managing Director
Coastal Capital Real Estate Advisors, Inc.
10877 Wilshire Blvd, Su 1550
Los Angeles,  CA 90024
Office:  310.954.2874
Cell:  415.385.9777
www.coastalcra.com

# EXHIBIT 3

1  **BARRY R. GORE, ESQ. SBN 143278**
   **SMITH | CAMPBELL | CLIFFORD | KEARNEY | GORE**
2  **A Professional Law Corporation**
   **3424 Carson Street, Suite 350**
3  **Torrance, California 90503**
   **(310) 542-0111 Telephone**
4  **(310) 214-7254 Facsimile**

5  Attorneys for Secured Creditor Remedy
   Investors, LLC

6

7

8                    **UNITED STATES BANKRUPTCY COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10                   **SAN FERNANDO VALLEY DIVISION**

   In re:                                    Case No. 1:10-bk-20599-GM
11
                                             Chapter 11
12 Valley MHP, LLC,
                                             **NOTICE OF DEFAULT PURSUANT TO**
13                                           **STIPULATION REGARDING INTERIM**
                                             **USE OF CASH COLLATERAL FROM**
14           Debtor and Debtor in            **MARCH 1, 2011 TO MAY 31, 2011,**
             Possession.                     **MOTION FOR RELIEF FROM STAY,**
15                                           **AND ADEQUATE PROTECTION**

16                                           **[No hearing Required]**

17

18

19        **To Debtor Valley MHP, LLC (the "Debtor") and its counsel**:

20        Remedy Investors, LLC ("Remedy Investors") hereby gives notice of default by the Debtor

21 under the *Stipulation Regarding Interim Use Of Cash Collateral From March 1, 2011 To May 31,*

22 *2011, Motion For Relief From Stay, And Adequate Protection* (the "Stipulation"), which was

23 incorporated into the Debtor's plan of reorganization that was confirmed by an order of the Court.

24        The Debtor has defaulted under the Stipulation by failing to make the payment that was due

25 to be paid to Remedy Investors on July 1, 2011 pursuant to the Stipulation.  Remedy Investors

26 reserves all of its rights under the Stipulation and applicable law.

27

28

                                                                                          25

*Handwritten, upper right:* E-FILED 7·5·11

Dated:  July 5, 2011

SMITH | CAMPBELL | CLIFFORD | KEARNEY |
GORE, A Professional Law Corporation


By: _____
Barry R. Gore
Attorneys for Secured Creditor Remedy Investors,
LLC

**VALLEY MHP LLC**
1500 WASHINGTON BLVD
MONTEBELLO, CA 90640-5402

1024

WELLS FARGO BANK, N.A.
www.wellsfargo.com
16-24/1220

7/13/2011

PAY TO THE ORDER OF     Remedy Investors, LLC          $  **9,354.58

Nine Thousand Three Hundred Fifty-Four and 58/100************************************************************* DOLLARS

Remedy Investors, LLC

MEMO
July Mortgage Payment + Extra

AUTHORIZED SIGNATURE

⑈000000 1024⑈ ⑈1 2200 24 7⑈  5 8 9 3 7 8 6 5 9 9 ⑈

THIS DOCUMENT MUST HAVE A COLORED BACKGROUND, ULTRAVIOLET FIBERS AND AN ARTIFICIAL WATERMARK ON THE BACK - VERIFY FOR AUTHENTICITY.

**VALLEY MHP LLC**                                                    1024

Remedy Investors, LLC                                   7/13/2011

| Date | Type | Reference | Original Amt. | Balance Due | Discount | Payment |
|------|------|-----------|---------------|-------------|----------|---------|
| 7/1/2011 | Bill | | 9,354.58 | 9,354.58 | | 9,354.58 |
| | | | | Check Amount | | 9,354.58 |

# CUSTOMER RECEIPT

FIRST REPUBLIC BANK
It's a privilege to serve you®

```
07/15/11  301    6784-BBROWN
DEP-CHECK              $9,354.58
```

Account No. DD*****6413

Checks and other items are received for deposit subject to the provisions of the Uniform Commercial Code or any applicable collection agreement. Payments received may be returned uncredited if for improper amount or if loan has been accelerated.

Your funds may be unavailable during a hold period pursuant to the check hold policy stated in our Account Disclosure. All items credited subject to final payment in cash. Any item may be charged back at any time before final payment.

For 24-Hour
Automated Information,
call (800) 392-1407

FRB 008 – 05/10

**FDIC** INSURED

Checking - WFB         July Mortgage Payment + Extra                    9,354.58

LMP100    M/P CHECK
E07050/39232 (4/11) 610050

27    Rev 3/11

# EXHIBIT 4

1  **BARRY R. GORE, ESQ. SBN 143278**
  **SMITH | CAMPBELL | CLIFFORD | KEARNEY | GORE**
2  **A Professional Law Corporation**
  **3424 Carson Street, Suite 350**
3  **Torrance, California 90503**
  **(310) 542-0111 Telephone**
4  **(310) 214-7254 Facsimile**

5  Attorneys for Secured Creditor Remedy
  Investors, LLC

6

7

8              UNITED STATES BANKRUPTCY COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10             SAN FERNANDO VALLEY DIVISION

11  In re:

                                              Case No. 1:10-bk-20599-GM
12  Valley MHP, LLC,
                                              Chapter 11
13
                                              **NOTICE OF DEFAULT PURSUANT TO**
14                                            **STIPULATION REGARDING INTERIM**
          Debtor and Debtor in               **USE OF CASH COLLATERAL FROM**
          Possession.                         **MARCH 1, 2011 TO MAY 31, 2011,**
15                                            **MOTION FOR RELIEF FROM STAY,**
                                              **AND ADEQUATE PROTECTION**
16
17                                            **[No hearing Required]**

18

19

20      **To Debtor Valley MHP, LLC (the "Debtor") and its counsel**:

21      Remedy Investors, LLC ("Remedy Investors") hereby gives notice of default by the Debtor

    under the *Stipulation Regarding Interim Use Of Cash Collateral From March 1, 2011 To May 31,*
22
    *2011, Motion For Relief From Stay, And Adequate Protection* (the "Stipulation"), which was
23
    incorporated into the Debtor's plan of reorganization that was confirmed by an order of the Court.
24
        The Debtor has defaulted under the Stipulation by failing to make the payment that was due
25
    to be paid to Remedy Investors on August 1, 2011, pursuant to the Stipulation.  Remedy Investors
26
    reserves all of its rights under the Stipulation and applicable law.
27

28

1

Dated:  August 1, 2011

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SMITH | CAMPBELL | CLIFFORD | KEARNEY |
GORE, A Professional Law Corporation


By:  _____
     Barry R. Gore
     Attorneys for Secured Creditor Remedy Investors,
     LLC

- 1 -

**VALLEY MHP LLC**
1500 WASHINGTON BLVD
MONTEBELLO, CA 90640-5402

WELLS FARGO BANK, N.A.
www.wellsfargo.com
16-24/1220

1057

8/4/2011

PAY TO THE
ORDER OF    Remedy Investors, LLC                                        $  **9,354.58

Nine Thousand Three Hundred Fifty-Four and 58/100*********************************************************************    DOLLARS

Remedy Investors, LLC

MEMO
    July Mortgage Payment + Extra



AUTHORIZED SIGNATURE

⑈000000⑈057⑈ ⑈⑆⑈22000247⑈ 5893786599⑈

THIS DOCUMENT MUST HAVE A COLORED BACKGROUND, ULTRAVIOLET FIBERS AND AN ARTIFICIAL WATERMARK ON THE BACK - VERIFY FOR AUTHENTICITY.

---

**VALLEY MHP LLC**                                                              1057

Remedy Investors, LLC                              8/4/2011

| Date | Type | Reference | Original Amt. | Balance Due | Discount | Payment |
|------|------|-----------|---------------|-------------|----------|---------|
| 8/1/2011 | Bill | | 9,354.58 | 9,354.58 | | 9,354.58 |
| | | | | Check Amount | | 9,354.58 |

---

# CUSTOMER RECEIPT

FIRST REPUBLIC BANK
It's a privilege to serve you®

Account No. ___ 6H3 ___

Received after 4:00 pm
or on Saturday

AUG 12 2011

Amount: 9354.58
By:

Checks and other items are received for deposit
subject to the provisions of the Uniform
Commercial Code or any applicable collection
agreement. Payments received may be returned
uncredited if for improper amount or if loan has
been accelerated.

Your funds may be unavailable during a hold
period pursuant to the check hold policy stated
in our Account Disclosure. All items credited
subject to final payment in cash. Any item may
be charged back at any time before final pay-
ment.

For 24-Hour
Automated Information,
call (800) 392-1407

FRB 008 – 05/10

**FDIC**
INSURED

---

Checking - WFB          July Mortgage Payment + Extra                          9,354.58

LMP100   M/P CHECK
E07050/39232 (4/11) 610050

# EXHIBIT 5

# Wire Transfer Services Standing Transfer Order
## Setup and Maintenance Agreement



Use this form to set up, update or delete a repetitive wire to be released at a specific date and time. Use a separate form for EACH Standing Order or if any information varies in Sections 3 or 4 below. See page 3 of this form for additional instructions and definitions.

Keying detailed wire information electronically into this form, by the banker on behalf of the customer, may result in a more accurate and legible form that can be processed more quickly, and retained more easily.

## 1. Type of Request

☒ NEW Standing Order     ☐ UPDATE Standing Order #          ☐ DELETE Standing Order – Requires 30 day advance notice. Order #

## 2. Customer Information

Customer Name
**Valley MHP LLC**

| Contact Name | Phone Number including Area Code |
|---|---|
| **Mark Magna** | **310-550-2407** |

## 3. Amount Type — Select only ONE type by completing the appropriate line. See page 3 for STO Type descriptions and additional information.

Currency Type: ☒ U.S. Dollars     Fixed Amount STO Only: ☐ Euro Dollars  ☐ Other Currency:

**Notes:** If the <u>entire</u> balance is to be drawn down the Peg Amount should be zero. If the optional Incremental Amount is requested, the account balance will be reduced by rounding to the closest $1000 increment not to exceed the Peg Amount.

| STO Type - See Page 3 | Amount/Peg Amount | STO Upper Limit if applicable | Incremental Amount (optional) |
|---|---|---|---|
| Fixed Amount | $ 9354.58 | | |
| Peg | $ | | ☐ Yes  ☐ No |
| Bal Peg | $ | $ | ☐ Yes  ☐ No |
| Peg-AA | $ | | ☐ Yes  ☐ No |
| Peg-OA | $ | | ☐ Yes  ☐ No |
| Peg-OAS | $ | | ☐ Yes  ☐ No |
| Peg-L | $ | | ☐ Yes  ☐ No |
| Peg-AL | $ | | ☐ Yes  ☐ No |
| Peg-OL | $ | | ☐ Yes  ☐ No |
| Peg-ECS | $ | | ☐ Yes  ☐ No |
| Bal-ECS | $ | $ | ☐ Yes  ☐ No |
| Peg-EC | $ | | ☐ Yes  ☐ No |
| Bal-EC | $ | | ☐ Yes  ☐ No |

## 4. Schedule Type — Select ONE type only.

Be sure to provide a start date in the format: **month, day, year, hour, and minute.** The time needs to be in Central Time. If no time is indicated, transfers will be sent by 7:30 A.M. Central Time. If it is known when this standing order should discontinue complete the optional End Date. If no End Date is provided the Standing Order will remain in place until a new form is completed requesting an update or deletion. The request must be received by Wire Transfer Services 30 days prior to the effective date. An update or deletion requiring less than 30 days notice please contact your banker. If the "Other" option is selected only a maximum of 6 specific Standing Orders will be executed. If additional orders are required another setup form will be required.

Schedule Type — Check one only
☐ Daily  ☐ Weekly  ☐ Biweekly (every 14 calendar days)  ☒ Monthly  ☐ Every ___ Months  ☐ End of Month  ☐ Other (see below)

**START DATE** – must be formatted as Month, Day, Year, Hour, and Minute in Central Time

| 09 | 10 | 2011 | | | ☐ ☐ |
|---|---|---|---|---|---|
| MM | DD | YY | HH | MM (CT) | AM  PM |

**END DATE (Optional)** – must be formatted as Month, Day, Year, Hour, and Minute in Central Time

| | | | | | ☐ ☐ |
|---|---|---|---|---|---|
| MM | DD | YY | HH | MM (CT) | AM  PM |

**Other Schedule** – for specific date and time, up to six individual transfers — must be formatted as **Month, Day, Year, Hour, and Minute** in Central Time

| | | | | | ☐ ☐ | | | | | | | ☐ ☐ |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| MM | DD | YY | HH | MM (CT) | AM  PM | | MM | DD | YY | HH | MM (CT) | AM  PM |
| MM | DD | YY | HH | MM (CT) | AM  PM | | MM | DD | YY | HH | MM (CT) | AM  PM |
| MM | DD | YY | HH | MM (CT) | AM  PM | | MM | DD | YY | HH | MM (CT) | AM  PM |

If a STO triggers on a non-business day do you want the STO to go ☐ BEFORE or ☐ AFTER the trigger date?  If no choice is made the default will be AFTER the trigger date.

Once the customer's approval/signature is received on the form, the Banker/Relationship Manager must approve/sign the form, then fax to 866-922-6202, Wire Implementation from a valid Wells Fargo Fax. File copies in your location's record-retention file.

| Account Number |
|---|
| 5893786599 |

© 2011 Wells Fargo Bank, N.A. All rights reserved. Member FDIC.
WTR8272 (6-11 FO)

## 5. Wire Details

**a.  Transfer FROM Account Information:**

| Account number | Existing debit account number if debit account number is being updated |
|---|---|
| 5893786599 | |

| Name as it appears on your Account | By Order of (Party sending funds, if different from account name) (Optional information) |
|---|---|
| Valley MHP LLC | |

By Order Of (Party sending funds, if different from account name) Address, City, State and Zip Code

**b.  Transfer TO Account Information:**

| Account number | Account name (beneficiary) |
|---|---|
| ██████6413 | Remedy Investors, LLC |

Address of beneficiary (A physical address is **required**.)
431 Wilshire Blvd Santa Monica, CA 90401

| ABA/SWIFT code | Bank name | International sort code |
|---|---|---|
| ██████669 | First Republic | |

Bank address
431 Wilshire Blvd Santa Monica, CA 90401

**c.  Information for Beneficiary:**

## 6. Standing Order Agreement

1.  The Customer authorizes Wells Fargo Bank, N.A. (the "Bank") to execute payment orders in accordance with the information provided above and agrees to the terms of (initial only one):
    a. _____ the following provisions of this Wire Transfer Agreement Standing Instructions and the Bank's separate Wire Transfer Services Agreement brochure, a copy of which the Customer acknowledges receiving, (or)
    b. _____ the Standing Instructions provisions of the Bank's separate Wire Transfer Services Description and Master Agreement for Treasury Management Services.
2.  For each payment order executed by the Bank in accordance with the terms of this Agreement, the Customer authorizes the Bank to debit the Account for the amount specified above. The Customer agrees to have sufficient available funds in the transfer from Account at the time of each debit.
3.  The Customer agrees to pay the Bank for its services in accordance with the Bank's standard schedule of charges for such services, receipt of which is hereby acknowledged. The Bank may modify its schedule of charges at any time upon written notice to the Customer.
4.  The Bank shall be responsible only for performing the services expressly provided in this Agreement, and shall be liable only for its gross negligence or willful misconduct in performing those services. In no event shall the Bank have any liability for any consequential, special punitive or indirect loss or damage which the Customer may incur or suffer in connection with this Agreement.
5.  The Customer acknowledges that if the above payment order describe: (a) the beneficiary inconsistently by name and account number, payment may be made on the basis of the account number even if it identifies a person different from the named beneficiary; or (b) a participating financial institution inconsistently by name and identification number, the identification number may be relied upon as the proper identification of the financial institution.
6.  This Agreement shall be interpreted under the laws of the state in which the Bank has its principal place of business. Any notice or periodic statement relating to a payment order sent by any reasonable means is conclusively presumed to have been received by the Customer five (5) days after such notice or periodic statement was sent by the Bank. This Agreement contains the entire agreement of the parties. No provision hereof may be modified except in writing signed by the party against whom such modifications is sought to be enforced. No waiver of any right by a party on one occasion shall be deemed a waiver of the same or any other right on a subsequent occasion. No rights or interest in this Agreement may be assigned by the Customer. The Bank may assign its interest in this Agreement to any successor institution in the event of merger, consolidation or corporate reorganization. Unless the context requires otherwise, the terms not defined in this Agreement have the meanings set forth in Article 4A of the Uniform Commercial Code. Any invalidity, in whole or in part, of any provision of this Agreement, shall not affect the validity of any other provision of this Agreement. Each party shall be excused by the other party for delays in performing and failures to perform this Agreement to the extent that any such delay or failure results from any cause beyond the reasonable control of the nonperforming party. Each party agrees to make reasonable efforts to prevent such occurrences from affecting the execution by it of its duties and obligation under this Agreement.
7.  The authority to execute such payment orders shall continue until the Bank receives express written notice that such authority is revoked. The request must be received by Wire Transfer Services 30 days prior to the effective date. For an update or deletion requiring less than 30 days notice please contact your banker.

## 7. Agreed to And Accepted By — Forms submitted without customer and banker signatures or older than 90 days will be returned to the banker unprocessed.

| Printed Name | Title |
|---|---|
| Mark Magna | Owner |

| Customer Signature | Date |
|---|---|
| X [signature] | 08/22/2011 |

| Customers' 1st ID type, number, issued by State/Country & Expiration Date | Customer's 2nd ID type, issued by State/Country & Expiration Date |
|---|---|
| CADL ███ 03/11/2012 | Pin Verified |

| Banker/Officer's Printed Name | Bank MAC | Document Prepared by & phone # (in case of questions about this setup) |
|---|---|---|
| Matthew Furniss | E2108-011 | Matthew furniss 310-550-2407 |

| Banker/Officer's Signature — Required. | Date | Banker/Officer's Phone # | Banker/Officer's Fax # |
|---|---|---|---|
| X | 08/22/2011 | 310-550-2407 | 310-550-2016 |

Banker's Wells Fargo email address for notification. A reasonable attempt must be made to contact the banker at the Wells Fargo email provided upon completion. Notification will NOT be sent to any email address outside the Wells Fargo system.

matthew.furniss@wellsfargo.com

**Once the customer's approval/signature is received on the form, the Banker/Relationship Manager must approve/sign the form, then fax to 866-922-6202, Wire Implementation from a valid Wells Fargo Fax. File copies in your location's record-retention file.**

© 2011 Wells Fargo Bank, N.A. All rights reserved. Member FDIC.
WTR8272 (6-11 FO)

# Wire Transfer Services Standing Transfer Order
# Definitions and Instructions

**Additional forms may be required.** If a Standing Transfer Order is the ONLY service requested, no other forms need to be completed. Depending on the choice made in the Agreement Details on page 2, the customer will need to be given additional form(s): if the first choice is made provide the Wire Transfer Services Agreement available online @ http://formsonline.homestead.com/Browse.aspx?CategoryID=101. If the second choice is made provide the Wire Transfer Services Agreement and the Master Agreement for Treasury Management Services, both available online and located in the legal category @ http://wholesale.homestead.wellsfargo.com/procedurescustomerservice/frames.asp?http://wholesale.homestead.wellsfargo.com/newscenter/newscenter.asp

## Balance Types

| Balance Type | Definition |
|---|---|
| Ledger/Book Balance | Bank balances that reflect all accounting entries that affect an account, which is total credits minus total debits from a given time in the day. |
| Intraday Available Balance | Opening available balance plus or minus intraday immediately available credits and debits. |
| Opening Available Balance | Ledger/book balance minus all outstanding float (meaning one or more day's float) minus pledges + sweeps. (The difference between this STO type and the ending collected balance is yesterday's one day float). |
| Ending Collected Balance | Ledger/book balance minus prior day 1, 2 and 3 + days float. (The difference between this STO type and the Opening Available balance is yesterday's one day float). |

## Other Definitions

| Term | Definition |
|---|---|
| Peg | The targeted account balance that should remain in the account after the STO is generated. |
| STO Upper Limit | The account balance must be equal to or greater than the amount in this field before a wire is generated. Once the account balance reaches the amount in the STO Upper Limit, draw account down to the peg balance. |
| Structure Balance | Accounts can be stand-alone or part of a structure, such as a Zero Balance relationship. If an account is part of a structure, the opening balance and intraday transactions for ALL accounts within the structure are taken into consideration in the balance used in the STO calculation. |
| Account Only Balance | A STO may be generated from an account that is part of a structure using the balance in that account only (not the structure). Those STO Types are PEG-OL, PEG-OA, PEG-AA, PEG-EC, BAL-EC, PEG-AL. |

## Standing Transfer Order Types

| STO Type | Definition | Balance Type | Includes Intraday Activity? | Structure Balance (S)/ Acct Only (A) | Supports STO upper limit (threshold)? |
|---|---|---|---|---|---|
| Fixed Amount | Debit Account for the fixed amount specified in Section 3. | Opening Available | N | A | NA |
| PEG | Draw account down to a peg balance using the account's available balance. Includes Intraday activity. Based on Structure Balance. | Opening Available | Y | S | N |
| BALPEG | Draw account down to a peg balance, using the account's available balance, when the account balance reaches or exceeds the amount in the "STO Upper Limit" field specified in Section 3. Includes intraday activity. Based on Structure Balance. | Opening Available | Y | S | Y |
| PEG-AA | Draw account down to a peg balance using the account's available balance. Includes intraday activity. Based on Account Only Balance | Opening Available | Y | A | N |
| PEG-OA | Draw account down to a peg balance using the account's opening available balance. Does not include intraday activity. Based on Account Only Balance. | Opening Available | N | A | N |
| PEG-OAS | Draw account down to a peg balance using the account's opening available balance. Does not include intraday activity. Based on Structure Balance. | Opening Available | N | S | N |
| PEG-L | Draw account down to a peg balance using the account's ledger balance. Includes intraday activity. Based on Structure Balance. | Ledger | Y | S | N |
| PEG-AL | Draw account down to a peg balance using the account's ledger balance. Includes intraday activity. Based on Account Only Balance. | Ledger | Y | A | N |
| PEG-OL | Draw account down to a peg balance using the account's opening ledger balance. Does not include intraday activity. Based on Account Only Balance. | Ledger | N | A | N |
| PEG-ECS | Draw account down to a peg balance based on the account's ending collected balance. Does not include intraday activity. Based on Structure Balance. | Ending Collected | N | S | N |
| BAL-ECS | Draw account down to a peg balance, using the account's ending collected balance, when the account balance reaches or exceeds the amount in the "STO Upper Limit" field specified in Section 3. Does not include intraday activity. Based on Structure Balance. | Ending Collected | N | S | Y |
| PEG-EC | Draw account down to a peg balance using the account's ending collected balance. Does not include intraday activity. Based on Account Only Balance. | Ending Collected | N | A | N |
| BAL-EC | Draw account down to a peg balance, using the account's ending collected balance, when the account balance reaches or exceeds the amount in the "STO Upper Limit" field specified in Section 3. Does not include intraday activity. Based on Account Only Balance. | Ending Collected | N | A | Y |

**Do not include this page when faxing or sending the first two pages for setup. Customer should retain this page for information.**

© 2011 Wells Fargo Bank, N.A. All rights reserved. Member FDIC.
WTR6272 (6-11 FO)

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

23564 Calabasas Road, Suite 104
Calabasas, CA 91302

A true and correct copy of the foregoing document described as _____
 Reply in Support of Motion for Final Decree and In Opposition to Entry of Order for Relief From Stay Filed by Remedy
Investors, LLC
_____
will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)**
in the manner indicated below:

I.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General
Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink
to the document. On 8/23/11_____, I checked the CM/ECF docket for this bankruptcy case or
adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF
transmission at the email address(es) indicated below:

☑ Service information continued on attached page

II.  **SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On _____, I served the following person(s) and/or entity(ies) at the last known address(es) in this
bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United
States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here
constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

III.  **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or
entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on 8/23/11_____, I served the following
person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by
facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on
the judge will be completed no later than 24 hours after the document is filed.
 Judge Mund, US Bankruptcy Court, 21041 Burbank Blvd., Suite 342, Woodland Hills, CA 91367

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| 8/23/11 | Lewis R. Landau | /s/ Lewis R. Landau |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

| In re: Valley MHP, LLC | CHAPTER: 11 |
| Debtor(s). | CASE NUMBER: 1:10-bk-20599 GM |

**ADDITIONAL SERVICE INFORMATION (if needed):**

NEF Service List (category I):

Scott C Clarkson on behalf of Creditor Remedy Investors, LLC
sclarkson@lawcgm.com

Glen Dresser on behalf of Creditor Community Commerce Bank
gombd@aol.com

Christine M Fitzgerald on behalf of Creditor Remedy Investors, LLC
cfitzgerald@scckg.com, nnarag@scckg.com;cbenson@scckg.com

Barry R Gore on behalf of Creditor Remedy Investors, LLC
bgore@scckg.com, nnarag@scckg.com;cbeson@scckg.com

Lewis R Landau on behalf of Debtor Valley MHP, LLC.
lew@landaunet.com

Eve A Marsella on behalf of Creditor Remedy Investors, LLC
emarsella@lawcgm.com

John E Nuelle on behalf of Interested Party Courtesy NEF
jnuelle@greenhall.com

Robert Reganyan on behalf of Debtor Valley MHP, LLC.
reganyanlawfirm@gmail.com

S Margaux Ross on behalf of U.S. Trustee United States Trustee (SV)
margaux.ross@usdoj.gov

United States Trustee (SV)
ustpregion16.wh.ecf@usdoj.gov

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*    **F 9013-3.1**